DA 08-0640

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 342

JOHN WATSON,

        Plaintiff and Appellee,

    v.

DEVRA WEST,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-2003-145
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        James C. Bartlett, Attorney at Law, Kalispell, Montana

        For Appellee:

        David M. McLean, Ryan C. Willmore, Browning, Kaleczyc, Berry
& Hoven, P.C., Missoula, Montana

        Submitted on Briefs:  September 16, 2009

        Decided:  October 20, 2009

Filed:

_____
        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Devra West appeals the Twenty-First Judicial District Court's imposition of a default as a sanction under M. R. Civ. P. 16(f) (Rule 16(f)) and its award of damages to John Watson. We affirm in part and vacate and remand in part.

## ISSUES

¶2    A restatement of the issues on appeal is:

¶3    Did the District Court abuse its discretion by striking, as a sanction, West's answer to Watson's complaint and entering a default judgment in favor of Watson?

¶4    Did the District Court err in awarding $730,000 in damages to Watson?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    John Watson and Devra West have been litigating this case for over six years. The origin of Watson's claims is a purported January 2002 agreement in which West asked Watson to help her establish a new corporation to be named Millennia Mind, Inc. The for-profit corporation was to have three stockholders—West, Watson and a co-worker of West's, Corinne Coffin. Coffin was to be the financial backer, agreeing to invest $1,000,000 into the corporation for start-up costs. West was to hold 55% of the shares, Coffin 23% and Watson 22%. Watson agreed to a salary of between $50,000 and $60,000 for the first year the corporation was operating and a salary of approximately $120,000 per year for the following four years. Watson performed various start-up tasks such as setting up the corporation, working with professionals on developing an image and logo, and preparing a business plan and strategy. However, in June 2002 West informed Watson that she no longer wanted to operate the corporation under a

2

stockholder arrangement. She and Watson were unable to agree on how to go forward and West and Watson severed their relationship. It does not appear that Coffin ever provided any financial backing.

¶6 In April 2003, Watson brought suit against West for breach of contract, fraud, constructive termination, constructive fraud and unjust enrichment. The trial was scheduled and continued three times on motion of Watson's counsel—twice due to trial date conflicts and once for replacement of counsel. Watson's counsel also submitted a fourth motion to continue but this motion was on behalf of West because her third attorney had withdrawn from the case and pretrial order deadlines were approaching. In November 2007, the District Court granted this last motion to vacate the scheduled trial and, rather than reschedule the trial, ordered a telephonic status conference for December 20, 2007.

¶7 In late November, a non-lawyer assistant to West, Geoff Reynolds, contacted the District Court administrator and requested a continuance, on behalf of West, of the December 20 conference call, explaining that West would be out of the country at that time. He requested that the status conference be rescheduled to January 16, 2008. The administrator explained that a formal request for a continuance must be submitted. No formal request was received by the court.

¶8 On December 13, Reynolds again contacted the court administrator asking that the status conference be rescheduled for February 27, 2008, to further accommodate West's travel schedule. The court administrator again informed Reynolds that a formal request was required to vacate and reschedule the December 20 status conference. On December

3

16, Reynolds faxed an unsigned request to the District Court administrator seeking a continuance. The court administrator contacted Reynolds and notified him that such a formal request had to be signed by West or her attorney. As of December 20, the District Court did not receive a signed formal request to vacate the hearing. The court administrator spoke with Reynolds on December 20 and he indicated that West was going to fax the request from Mexico. No request was received but the record reveals that the court did not conduct the status conference on December 20.

¶9 On January 3, 2008, the court administrator and Reynolds spoke by telephone again regarding the lack of a formal request to vacate and reschedule the December 20 conference. Later that day, West faxed a letter dated December 26, 2007, to the court requesting that the conference be rescheduled for February 27, 2008. The court granted the request, set the conference call for 3 p.m., and issued a Minute Entry into the record.

¶10 On February 26, Reynolds notified the court and Watson's attorney that West would not be available for the February 27 conference call. He requested that the status conference be rescheduled to March 27, 2008. Watson's attorney agreed to the request but objected to any further delays. The District Court granted the request and rescheduled the conference call to March 27 at 9:00 a.m. The District Court sent West written confirmation, by certified mail, of the March 27 conference date and time, using the same address it had used to notify West of previous rescheduled dates. While Reynolds had signed for the previous certified letters, the letter confirming the March 27 conference was returned to the District Court unopened after three failed attempts at

4

delivery. However, on March 26, Reynolds called the court administrator to confirm the telephone instructions for participating in the March 27 conference call.

¶11    The telephone conference call began, as scheduled, on March 27 at 9:00 a.m. Watson's counsel was present; however, West did not call. The District Court ordered the setting of new pretrial and trial dates. It also discussed with Watson's counsel the possibility of sanctions against West if she failed to meet further scheduled deadlines. At 1:45 p.m. that day, Reynolds called the court administrator to confirm the call-in procedures. He was informed that the conference call had occurred at 9:00 a.m. that morning and West had not participated. He expressed surprise that "he" had missed the call and gave no indication that West had intended to participate.

¶12    The District Court issued its fourth trial preparation order on March 31, 2008, setting forth deadlines for pretrial filings and setting the jury trial for July 28 through August 1, 2008. West was given a June 5, 2008 deadline for submitting her proposed pretrial order to Watson's counsel, and a June 19 deadline for submission of her final pretrial order. The court set the Pretrial Conference for July 3. West did not submit a proposed pretrial order; therefore, on June 18, Watson moved for Rule 16(f) sanctions against her. The motion cited both West's failure to appear at the March 27 telephone status conference and her failure to submit her proposed pretrial order. West did not respond to Watson's sanction motion. The court scheduled a hearing on the motion for July 1, 2008.

¶13    At the July 1 hearing, both West and Watson's attorney appeared and presented arguments. West maintained that she fully intended to participate in the March 27

conference call but had been misinformed by the court administrator of the time of the call. She was prepared to participate at 3:00 p.m. West also argued that she was without an attorney because she did not have the funds to pay her third and last attorney. West attempted to persuade the court that this attorney would continue to represent her once she paid him and that funds for such payment were forthcoming. She reported that she had intended that this attorney comply with the court's scheduling order and prepare her proposed pretrial order. The court noted that her last attorney had withdrawn in October 2007 citing a deteriorated relationship, and that this attorney withdrew long before the scheduling order had been issued in March 2008. Taking the matter under advisement, the District Court vacated the July 3 pretrial conference and the July 28 trial date.

¶14     On July 15, 2008, the District Court issued its Opinion & Order (Opinion) in which it concluded that West had proper notice of the correct time for the March 27 status call but, nonetheless, failed to participate. The court noted that the March 31, 2008 trial preparation order was a M. R. Civ. P. 16(b) (Rule 16(b)) scheduling order. Additionally, the District Court took judicial notice of another case that was before it in which West also was a party, and in which West likewise failed to comply with scheduling orders. The court held that failure to appear at the conference call and failure to comply with the scheduling order justified the imposition of Rule 16(f) sanctions against West. The court struck West's answer to Watson's complaint and entered a default against West. The court also scheduled a hearing on damages to be held on October 2, 2008. West did not respond to this Opinion nor did she attend the October 2 hearing on damages.

¶15   On October 23, 2008, the District Court entered its Findings of Fact, Conclusions of Law and Judgment (Judgment) awarding Watson $730,000 in damages based on evidence presented by Watson at the October 2 hearing.  Watson claimed that he would have earned at least $510,000 in income over the first five years that the corporation was operating and that each of his 22 shares in the corporation was worth $10,000, or a total of $220,000.[1]   He therefore requested a total of $730,000 in damages from West personally.  The District Court entered judgment in the sum of $730,000 in compensatory damages, and assessed $6,209.27 in attorney fees incurred in preparing the pretrial order and in filing the motion for sanctions.

¶16   West appeals the court's July 15 Opinion imposing sanctions and entering a default against her, and the court's October 20 Judgment awarding damages to Watson.  We affirm the District Court's July 15 Opinion and vacate, in part, and remand the court's October 20 Judgment.

**STANDARDS OF REVIEW**

¶17   We review a district court's decision to impose sanctions for failure to comply with a Rule 16(b) order for an abuse of discretion.  *McKenzie v. Scheeler*, 285 Mont. 500, 507, 949 P.2d 1168, 1172 (1997).  The Court also reviews the sanction imposed for an abuse of discretion.  *McKenzie*, 285 Mont. at 511, 949 P.2d at 1174.

¶18   A district court's damage determination is a factual finding which must be upheld if it is supported by substantial evidence; we will not overturn a district court's damages

---

[1]   Calculated on the basis of the issuance of 100 shares in a corporation having an initial capital investment of $1,000,000.

determination unless it is clearly erroneous. *Tractor & Equipment Co. v. Zerbe Bros.*, 2008 MT 449, ¶ 12, 348 Mont. 30, 199 P.3d 222 (citation omitted). However, speculative damages that are not clearly ascertainable are not recoverable. *Hallenberg v. General Mills Operations*, 2006 MT 191, ¶ 32, 333 Mont. 143, 141 P.3d 1216 (citation omitted).

## DISCUSSION

¶19 *Did the District Court abuse its discretion by striking, as a sanction, West's answer to Watson's complaint and entering a default judgment in favor of Watson?*

¶20 The District Court described in its Opinion West's substantive failures to comply with the rules of procedure and the Rule 16(a) pretrial scheduling order, i.e., her failure to seek a timely continuance of the December 20, 2007 status conference, failure to attend the March 27, 2008 status conference scheduled on that date at her request, failure to submit her proposed pretrial order to Watson on the date prescribed, and failure to prepare for the July 3, 2008 pretrial conference. The court also noted that after missing the March 27 status conference, West did not contact the court explaining her alleged misunderstanding of the time of the conference, nor did she seek a continuance of the deadlines in the trial preparation order. She simply let them pass without meeting them or communicating with the court about her difficulties. Moreover, the District Court noted that she did not respond to Watson's motion for sanctions. The court also referenced West's "cavalier disregard of scheduling orders" in a separate foreclosure action brought against her in its court.

¶21　The District Court also took exception to West's hearing testimony regarding her third attorney who had withdrawn five months before the court issued its trial preparation order scheduling the deadlines that West failed to meet. The court expressed skepticism at West's attempt to blame this attorney for her failure to comply with the scheduling order and was "dubious" of her claim that this attorney would represent her at trial once she paid him, especially in light of her failure to submit any verification from this attorney that he would do so. Based upon this conduct, the District Court concluded that sanctions against West were warranted.

¶22　West does not argue on appeal that the court abused it discretion by imposing a sanction upon her; rather, she argues that the sanction selected was too harsh and therefore was an abuse of the court's discretion. She maintains that she did not abuse discovery procedures, nor needlessly delay the proceeding with multiple requests for continuances. She repeatedly accuses the District Court of prejudging her and intentionally setting deadlines "anticipating that [she] would miss" one. West posits that Watson would not have been prejudiced by moving pretrial or trial dates and that she had no warning that the harshest sanction was being considered. She asserts that lesser sanctions were available to the court and should have been imposed.

¶23　Watson counters that the sanction selected by the District Court was proper and appropriate. Relying on *Hauschulz v. Michael Law Firm*, 2005 MT 189, ¶ 18, 328 Mont. 95, 117 P.3d 908, Watson opines that: (1) West did not exercise diligence in this matter; (2) he would be prejudiced by further delays in the proceeding, especially given that West was unable to provide any assurances as to when she would be ready to proceed to

trial; (3) the District Court had encouraged West's participation in the proceeding and had twice continued the status conference despite West's failure to seek a formal continuance; (4) under the circumstances, nothing could be accomplished by imposing a lesser sanction; and (5) while the court was not required to provide West with a specific warning of sanctions, it did instruct the parties that no further modifications to the last trial preparation order would be allowed absent a showing of good cause.[2]  Watson further asserts that West was on notice of the possibility of the harshest sanction, because in his Motion for Sanctions he suggested a default judgment against West.  Under these circumstances, Watson asserts the District Court did not abuse its broad discretion in striking West's answer and entering a default against her.

¶24  It is well established that courts may impose sanctions for a party's failure to obey a scheduling or pretrial order.  *See* Rule 16(f).  "Rule 16(f) authorizes a trial court, on its own initiative or upon motion, to order such sanctions 'as are just' for misconduct relating to the Rule 16 processes . . . ."  *Stevenson v. Felco Indus.*, 2009 MT 299, ¶ 33, 352 Mont. 303, ___ P.3d ___ (*citing Vermeer v. Jones*, 2004 MT 77, ¶ 9, 320 Mont. 435, 87 P.3d 516).  Rule 16(f) directs courts to Rule 37(b)(2)(B), (C) and (D) for examples of sanctions available to the court.  Rule 37(b)(2)(C) expressly authorizes a court to strike pleadings, dismiss an action, and render a judgment of default against a disobedient party.  As the District Court was authorized to impose this particular sanction upon West, we

---

[2]  We note, however, that each of the previous trial preparation orders contained this same language.

need only determine whether the court abused its discretion, under these circumstances, in doing so.

¶25 Both parties cite *McKenzie* as support for their positions—West to the dissent and Watson to the majority decision. In *McKenzie*, the district court dismissed McKenzie's complaint with prejudice for failing to comply with discovery procedures and scheduling orders. We stated that such a dismissal "was in the nature of a Rule 41(b), M. R. Civ. P., dismissal for failure 'to prosecute or to comply with these rules or any order of court . . . .' " *McKenzie*, 285 Mont. at 507, 949 P.2d at 1172. As argued by Watson above, this Court assesses whether a district court abused its discretion in dismissing an action under Rule 41(b) by reviewing four factors: (1) the plaintiff's diligence in prosecuting his claims; (2) the prejudice to the defense caused by the plaintiff's delay; (3) the availability of alternate sanctions; and (4) the existence of a warning to plaintiff that his case is in danger of dismissal. *McKenzie*, 285 Mont. at 517, 949 P.2d at 1178. Acknowledging that in this case the sanctioned party was the defendant, we apply these four factors.

¶26 Reviewing the "diligence" exercised by West, we note that West was represented by attorney David Markette from April 2003 until May 2006. After he withdrew from representing West, attorney Karl Rudbach stepped in as West's counsel in August 2006. He represented West until January 2007 when he, too, withdrew. In July 2007, John Quatman filed a notice of appearance on behalf of West. He filed nothing else in this case until his notice to withdraw in October 2007. West did not obtain counsel after Quatman's withdrawal.

¶27     Between November 14, 2007, when the court vacated the second amended trial preparation order and July 16, 2008, when the court issued its Opinion imposing sanctions on West, West failed to: (1) seek formal continuances of the status conference despite being told repeatedly that she must do so and how it should be done; (2) accept certified mail from the District Court sent to her correct address; (3) attend the status conference; (4) put forth acceptable reasons for requesting continuances or not attending; (5) seek continuances of pretrial order deadlines; (6) prepare and submit a proposed pretrial order; and (7) respond to Watson's motions for sanctions. Her explanations at the sanction hearing were inadequate and attempted to blame an attorney who had not represented her for over eight months. We conclude that West did not exercise diligence; to the contrary, she unreasonably delayed and thwarted the progress of the proceeding.

¶28     While the District Court did not directly address the prejudice to Watson from West's actions, Watson nonetheless was prejudiced. He and/or his counsel endured further delays to the proceeding while West refused to participate in scheduled telephone conferences because she was traveling. Watson then paid his attorney to attend the conference, a full three months after its original scheduled date, and West still failed to attend. Watson then incurred the expense of filing a motion for sanctions and a brief in support. He then paid his attorney to attend the sanctions hearing. These expenses were incurred as a direct result of West's lack of diligence and disregard for the court's orders. Further, there was no new trial date on the horizon.

¶29     The District Court did not address the availability of alternate sanctions, nor will we provide an inventory of sanctions the court could have chosen. *McKenzie* and

12

*Eastern Livestock Co., Inc. v. O'Neal*, 285 Mont. 90, 945 P.2d 931 (1997), relied upon by the District Court, both support a sanction of dismissal in a case such as this. In *McKenzie*, McKenzie failed to respond to requests for production, failed to meet deadlines for service of expert witness disclosure statement, failed to arrange for a settlement conference, and failed to submit a proposed pretrial order. *McKenzie*, 285 Mont. at 504, 949 P.2d at 1170. In affirming the district court's dismissal of McKenzie's action, we noted that, in addition to considering the extent of the discovery abuse and prejudice to an opposing party, we also consider a party's disregard of a court's orders. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177-78. In *Eastern Livestock*, we also affirmed the district court's Rule 16(f) sanction of default judgment in the amount of $18,000 for defendant O'Neal's repeated failure to participate in court-ordered mediation. *Eastern Livestock*, 285 Mont. at 99, 945 P.2d at 937.

¶30 Lastly, as we explained in *McKenzie*, the District Court was not required to provide an express warning of dismissal or default to West. *McKenzie*, 285 Mont. at 511-12, 949 P.2d at 1175. As we noted, the District Court stated in its third amended trial preparation order that no further delays would be allowed absent a showing of good cause. West failed to meet the deadlines in this order and did not seek continuances. Moreover, West was on notice that Watson was seeking the sanction of default judgment.

¶31 We have repeatedly stated that the district court is in a better position to consider the circumstances of each case and decide questions of good faith in situations that may warrant sanctions. *Stevenson*, ¶ 34, *Germann v. Stephens*, 2006 MT 130, ¶ 23, 332 Mont. 303, 137 P.3d 545, *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172. In the case before us,

13

the court had presided over this matter for more than five years. It was familiar with West, not only from her conduct in this case but from her failure to comply with scheduling orders in another case before this same court.

¶32 Under these circumstances, we conclude the District Court did not abuse its discretion by imposing the sanction it chose. We therefore affirm the District Court's imposition of this particular sanction as well as its award of $6,209.27 to Watson for attorney fees and costs for preparing the pretrial order and the Motion for Sanctions.

¶33 *Did the District Court err in awarding $730,000 in compensatory damages to Watson?*

¶34 Section 27-1-302, MCA, requires that damages, in all cases, must be reasonable. Section 27-1-311, MCA, which provides for damages arising from a breach of contract, expressly states that "[d]amages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract." We have held that "speculative" damages that are not "clearly ascertainable are not recoverable." *Albers v. Bar ZF Ranch, Inc.,* 229 Mont. 396, 404, 747 P.2d 1347, 1352 (1987); *Hallenberg*, ¶ 32. The purpose of awarding damages in a breach of contract claim is to "put the nonbreaching party in as good a position as if the contract had been performed." *Cut Bank School Dist. No. 15 v. Rummel*, 2002 MT 248, ¶ 8, 312 Mont. 143, 58 P.3d 159 (citation omitted).

¶35 In the case before us, Watson's claims for damages are based upon his understanding of the salary he would receive during the first five years Millennia Mind, Inc. was in operation, and the value of the stock issued at the time the corporation was

14

established. As noted above the District Court awarded Watson damages totaling $510,000 in lost wages and $220,000 in stock values. While the District Court notes in its Judgment that Millennia Mind "is still a viable business entity" that has not been dissolved, there appears to be some question as to whether this corporation has ever been capitalized or brought into operation. West argues on appeal that it has not. Moreover, there appears to be no question that the capital contribution of $1,000,000 was to be made by Coffin and not West, and yet neither Coffin nor, notably, the corporation that would pay Watson's salary, was named by him as a party defendant.

¶36 It is evident that the court accepted Watson's assertions of the damages to which he was entitled without question. The court did not inquire of him concerning the capitalization of the corporation, nor did it ask whether Watson had made any attempt to mitigate his damages by seeking other employment for the five years for which he sought payment of a salary. As noted in ¶ 5 herein, the agreement between Watson and West was negotiated in January 2002, but a mere five months later the arrangement was effectively canceled. In sum, the question arises whether it was reasonable for the court to award Watson a full five years of lost salary, together with the claimed full value of stock shares, when the corporation itself was not named as a defendant, and the possibility exists that it was never even capitalized or functional.

¶37 The fact that a judgment is entered by default does not abrogate the requirement that the damages awarded be reasonable and clearly ascertainable. *Johnson v. Murray*, 201 Mont. 495, 506, 509, 656 P.2d 170, 175, 177 (1982). Based upon the foregoing unanswered questions, we vacate the District Court's award of $730,000 in damages and

15

remand this matter to the District Court for further proceedings to determine the nature and extent of Watson's damages and allow him the opportunity to address West's contention that Millennia Mind is merely a "corporate shell" that "never did one day of business."

## CONCLUSION

¶38 For the foregoing reasons, we affirm the District Court's imposition of sanctions on West, its entry of a default against West and its award of $6,209.27 in attorney fees and costs. We vacate the court's award of $730,000 in compensatory damages and remand this issue to the court for determination of reasonable and non-speculative damages.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

16