

DA 11-0473

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 83

RALEIGH KRAFT,

>   Plaintiff, Appellee and
>   Cross-Appellant,

>    v.

HIGH COUNTRY MOTORS, INC., and
MITCHELL A. RIDER; *et al.*,

>   Respondents and Appellants.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-07-1700
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

>   For Appellants:

>   Charles H. Carpenter, Carpenter Law Firm, PLC, Missoula, Montana

>   For Appellee:

>   Trent N. Baker, Datsopoulos, MacDonald & Lind, P.C.,
>   Missoula, Montana

Submitted on Briefs:  February 29, 2012

Decided:  April 17, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 High Country Motors, Inc. (HCMI) and Mitchell Rider appeal an Order of the District Court for the Fourth Judicial District, Missoula County, imposing a default judgment against them as a discovery sanction. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

¶2 Appellants raise the following issues on appeal:

1. Whether the District Court abused its discretion when it entered a default judgment for Raleigh Kraft as a discovery sanction.

2. Whether the District Court abused its discretion when it refused to set aside the sanction orders.

3. Whether the District Court erred as a matter of law in calculating damages.

¶3 In addition, Kraft raises the following issue by way of cross-appeal:

4. Whether the District Court failed to properly calculate and award prejudgment interest.

**Factual and Procedural Background**

¶4 Kraft is a financial advisor residing in Virginia. He spent part of his childhood in eastern Montana where he became acquainted with Rider. Rider is a used car salesman and the sole shareholder of HCMI, a used car dealership.

¶5 In 2006, Kraft and Rider entered into a verbal agreement to buy and then resell a motor coach. The agreement required Rider to travel from Missoula to an auction in Arizona and purchase the motor coach with funds that Kraft borrowed from the bank.

2

Kraft would then fly from his home in Virginia to Arizona to pick up the motor coach and use it for the summer season.

¶6 The motor coach was to be titled and insured by Kraft using Rider's Missoula business address. Rider and Kraft were to alternate making payments on the loan until they sold the motor coach at the end of the season. When the motor coach was sold, the loan was to be repaid, and Kraft was to recover his out-of-pocket expenses related to the purchase. Rider was to keep any remaining funds to reimburse his out-of-pocket expenses and to provide his profit.

¶7 The particular motor coach Kraft and Rider were interested in had a minimum bid price of $430,000. Kraft applied for a loan for that amount, which was approved by the bank. The bank issued a check made payable to HCMI, Rider's car dealership. Rider went to the Arizona auction and purchased the motor coach. Because no one else bid on the coach, Rider was able to get it for $360,000 plus a buyer's fee of $2,300 and a $5,000 finder's fee paid to the individual who located the motor coach at auction. Rider did not inform Kraft of the discounted price. Kraft picked up the motor coach, took it to Virginia, and used it for the 2006 summer season.

¶8 When Rider picked up the motor coach in the fall of 2006, it was in terrible shape. Because it was still under warranty, the manufacturer was willing to do extensive repairs on it. Hence, the motor coach was fully reconditioned and Kraft picked it up in Oregon in May 2007. In a letter dated June 6, 2007, Kraft informed Rider that Kraft intended to use the motor coach for the 2007 summer season as well.

3

¶9    Kraft discovered the true purchase price of the motor coach when the individual who located it at auction contacted Kraft about a potential buyer. Kraft maintains that because of the inflated loan amount, Kraft has never been able to sell the motor coach for more than what he owed on it. Consequently, he has continued to make payments on the motor coach.

¶10    Kraft brought suit against Rider, HCMI and the bank on December 20, 2007, asserting claims of breach of contract, fraud, negligent misrepresentation, negligence, conspiracy and unjust enrichment. Rider and HCMI engaged Paul Cooley of Skelton & Cooley to defend them in the action.

¶11    In February 2008, Kraft served discovery on both Rider and HCMI, requesting, among other things, various tax records and financial data. Over the next several months, Rider and HCMI produced some of the requested information while asserting that other information was not relevant or that discovery was unduly burdensome. Deeming their responses insufficient, Kraft filed a motion in May 2010 requesting the District Court compel Rider and HCMI to produce the information and documents sought in discovery. Thereafter, Rider and HCMI filed a Motion for a Protective Order and to Limit the Scope of Discovery.

¶12    The District Court granted Kraft's motion to compel and denied Rider's and HCMI's motion for a protective order on November 22, 2010. The court ordered that Rider and HCMI provide the requested documents and responses to the interrogatories, but the court did not give a specific deadline for compliance. According to Rider, he worked with Cooley's paralegal to provide everything that Kraft requested. Rider also

4

asserts that Cooley never informed him that he needed to produce additional information, nor did Cooley seek an extension of time to allow Rider to produce additional information.

¶13 On December 28, 2010, Kraft filed a motion for sanctions for failure to comply with the District Court's order. Thereafter, Cooley provided Kraft with supplemental discovery responses, but Kraft's counsel continued to assert that the discovery responses were inadequate because certain tax returns had not been provided. On February 14, 2011, the District Court granted Kraft his attorneys' fees as a sanction against Rider and HCMI, but denied Kraft's request that default judgment be entered in his favor. The court noted that it would not enter a default judgment provided that Rider and HCMI fully complied with the order to compel within 20 days.

¶14 On February 22, 2011, Cooley moved to set aside the District Court's order arguing that the District Court failed to hold a hearing on the matter; that Cooley's failure to comply was excusable because he was in the process of closing his practice in Montana and move out of State; and that Kraft had not shown that the supplemental discovery responses were inadequate. Thereafter, Cooley notified opposing counsel that he intended to withdraw as counsel for Rider and HCMI, and that he would be filing a notice under Uniform District Court Rule 10, along with a motion for an extension of time due to his withdrawal.

¶15 The District Court set a status conference for March 15, 2011. Neither Cooley nor anyone else appeared on behalf of Rider or HCMI at that conference. The District Court set a new status conference for March 22, 2011, and ordered Cooley to appear. Again

5

Cooley did not attend. Instead, Dan Cahalan appeared for Rider and HCMI; however, Cahalan notified the court that Cooley was not actually withdrawing, and that Cahalan would be acting as local counsel since Cooley was now living in Arizona. Cahalan requested a stay while he familiarized himself with the matter, and the court agreed to continue the matter for two weeks.

¶16 Kraft filed a renewed motion for sanctions on April 1, 2011, claiming that "Rider and HCMI's discovery abuse and recent shenanigans have caused further delay and expense." Another status conference was held on April 5, 2011. Cooley did not attend despite the District Court's specific request that he do so. Instead, Rider and HCMI were represented by Cahalan who characterized himself as "the cardboard cut-out." Cahalan asked the court to schedule a hearing on the pending motions on a date when Cooley would be available. The court closed the status conference without setting a new date for a hearing. Immediately after the status conference, Cahalan served supplemental discovery responses on Kraft. In addition, Cahalan filed and served a demand that Kraft clarify exactly what deficiencies he claimed still existed in the discovery responses.

¶17 On April 11, 2011, the District Court denied Rider's and HCMI's motion to set aside the February 14, 2011 order regarding sanctions, and entered default judgment against them. The court noted in its order that the supplemental discovery responses filed by Rider and HCMI on April 5, 2011, came too late to avoid an imposition of the sanctions described in the court's February 14, 2011 order.

¶18 Cahalan filed a motion on April 15, 2011, requesting that the court set aside this order on the basis that counsel's failure to meet the discovery deadlines was caused by

6

the collapse of Cooley's law practice and amounted to excusable neglect. Rider and HCMI subsequently engaged new counsel who filed a second motion to set aside the April 11, 2011 order. In this second motion, filed on May 2, 2011, Rider submitted a lengthy affidavit pointing out that the discovery violations were trivial, and that they were attributable to Cooley and not to any intentional conduct by Rider or HCMI. In addition, according to Rider and HCMI, their new counsel was able to find the missing tax returns by contacting the son of HCMI's deceased prior accountant, and provide them to Kraft.

¶19 The District Court denied this second motion in an Opinion dated June 3, 2011. The court noted that this motion was untimely because it was not filed within 10 days of the court's April 11, 2011 order pursuant to M. R. Civ. P. 59(e).[1] With respect to the argument that the default judgment was unjust because it punished Rider and HCMI for Cooley's gross neglect, the court held that the appropriate standard is that neglect of an attorney is attributable to the client unless the attorney completely abandoned the client. Finding that Cooley had not abandoned Rider and HCMI, the court denied the second motion. In addition, the court summarily denied the first motion in an order dated June 8, 2011.

¶20 The District Court held a hearing on damages on June 14, 2011, wherein the parties presented different figures for an award of damages based on different legal methodologies. Kraft argued that the appropriate measure of damages was the difference between the amount he would have paid on the loan, had it been taken out for the actual

---

[1] The Montana Rules of Civil Procedure were revised effective October 1, 2011. Because the District Court's orders predate the amendments to the Rules, any references herein to the M. R. Civ. P. refer to the 2009 version of the Rules.

purchase price of the motor coach, and the amount he actually paid on the loan through the date of the judgment. He also asserted that pre-judgment interest, at the statutory rate, should be added to the amount of damages. Rider and HCMI argued that the proper measure of damages was the difference between what Kraft should have gotten from the whole transaction and what he got as a result of Rider not telling him about the discounted price. And, because an element of the agreement between Kraft and Rider was that the motor coach be sold after the first season, Rider and HCMI maintained that the proper measure of damages was limited to the excess interest paid in that first season.

¶21 The District Court issued its Findings of Fact, Conclusions of Law and Order on July 14, 2011, wherein the court entered judgment in the amount of $74,153.93 in favor of Kraft. To arrive at that figure, the court took the increased principal amount of the loan resulting from Rider's inflation of the purchase price ($68,958.00), plus the amount of interest charged by the bank on the increased principal through the date of judgment ($19,128.96). The court then subtracted from that total the amount Rider had paid to the bank during the first year of the loan ($13,933.03), for a total damages award of $74,153.93.

¶22 Rider and HCMI moved to have the judgment certified as final under M. R. Civ. P. 54(b) and the District Court granted their motion on August 5, 2011. Rider and HCMI subsequently filed their notice appealing the default judgment imposed against them in this case.

**Standard of Review**

8

¶23 We review a District Court's decision to impose discovery sanctions for an abuse of discretion. *Peterman v. Herbalife Int'l, Inc.*, 2010 MT 142, ¶ 14, 356 Mont. 542, 234 P.3d 898 (citing *In re Marriage of Lundstrom*, 2009 MT 400, ¶ 15, 353 Mont. 436, 221 P.3d 1178). A district court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Orcutt v. Orcutt*, 2011 MT 107, ¶ 6, 360 Mont. 353, 253 P.3d 884 (citing *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 19, 338 Mont. 423, 166 P.3d 451).

¶24 A district court's damage determination is a factual finding which must be upheld if it is supported by substantial evidence, and which we will not overturn unless it is clearly erroneous. *Watson v. West*, 2009 MT 342, ¶ 18, 353 Mont. 120, 218 P.3d 1227 (citing *Tractor & Equipment Co. v. Zerbe Bros.*, 2008 MT 449, ¶ 12, 348 Mont. 30, 199 P.3d 222). In addition, we review a district court's conclusions of law to determine whether the district court's interpretation and application of the law are correct. *Performance Machinery v. Yellowstone Mountain Club*, 2007 MT 250, ¶ 12, 339 Mont. 259, 169 P.3d 394 (citing *Sunday v. Harboway*, 2006 MT 95, ¶ 17, 332 Mont. 104, 136 P.3d 965; *In re A.N.W.*, 2006 MT 42, ¶ 28, 331 Mont. 208, 130 P.3d 619).

**Issue 1.**

¶25 *Whether the District Court abused its discretion when it entered a default judgment for Kraft as a discovery sanction.*

¶26 Rider and HCMI maintain that the only things missing from their discovery responses were some tax returns and bank information. They contend that failing to

9

provide those records did not cause Kraft any significant substantive prejudice since nothing in those records went to any contested issues of liability on Kraft's claims or any defenses by Rider and HCMI. Rider and HCMI also contend that the violation in this case was substantively trivial, but the sanction imposed was severe. Consequently, Rider and HCMI argue that the District Court abused its discretion when it entered a default judgment against them.

¶27 Kraft asserts that the sanction of dismissal in this case was supported by the extent and nature of the discovery abuse. Kraft contends that he repeatedly demonstrated that the requested information was relevant to the existence and interpretation of the agreement between the parties regarding the motor coach, Rider's attempt to avoid personal liability, and Kraft's assertion that HCMI was merely Rider's alter ego. Kraft further contends that Rider's and HCMI's initial responses were "woefully incomplete and evasive" and that Rider and HCMI repeatedly failed to supplement those responses despite warnings from Kraft that he would seek sanctions, as well as warnings from the District Court that it would impose sanctions.

¶28 We review the following three criteria to determine whether a sanction imposed pursuant to M. R. Civ. P. 37(b) is an abuse of discretion: (1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse; (2) the extent of the prejudice to the opposing party which resulted from the discovery abuse; and (3) whether the court expressly warned the abusing party of the consequences. *Xu v. McLaughlin Research Institute*, 2005 MT 209, ¶ 26, 328 Mont. 232, 119 P.3d 100 (citing *Smith v. Butte-Silver Bow County*, 276 Mont. 329, 339-40, 916 P.2d 91, 97 (1996)).

10

¶29 We stated in *Peterman*, that a party may be sanctioned for making repeated assurances to provide discovery and then failing to do so. *Peterman*, ¶ 22. Montana courts will consider a party's disregard of the court's orders and authority when imposing sanctions. *McKenzie v. Scheeler*, 285 Mont. 500, 516, 949 P.2d 1168, 1178 (1997).

¶30 In the instant case, Rider and HCMI note in their brief on appeal that the third prong of the test set forth above is not at issue here as the sanction imposed by the District Court in its April 11, 2011 Order is exactly the sanction the court warned about in its February 14, 2011 Order. Nevertheless, Rider and HCMI contend that rather than applying all three prongs of the test before imposing sanctions, the District Court abused its discretion by ignoring the first two prongs of the test simply because the third prong of the test was satisfied, and in doing so, the court failed to examine the underlying merits of the discovery issues.

¶31 As to the first prong of the test, Rider and HCMI contend that the District Court gave no consideration to any sanction other than default judgment, and never made any assessment whether a different sanction would have been more appropriate to the violations the court found. We disagree.

¶32 The sanction imposed—default judgment—was justified in this case because this discovery dispute dragged on for more than three years. Kraft's discovery requests were served on Rider and HCMI on February 5, 2008, yet despite repeated additional requests, on November 22, 2010, the court had to order Rider and HCMI to comply. Even so, it was not until May 11, 2011, that Rider and HCMI filed a supplemental brief wherein they

11

stated that the tax returns in question had been located, and that these tax returns could have been provided in December 2010.

¶33 As to the second prong of the test, Rider and HCMI contend that any prejudice to Kraft based on Rider's and HCMI's discovery violations was negligible and was, in part, self-inflicted. Rider and HCMI maintain that Kraft had sufficient information to make his argument that HCMI is Rider's alter ego, and that the additional tax returns would not have made any difference in the outcome. Rider and HCMI also maintain that they attempted in February, March and April 2011 to get from Kraft a clarification of what information was missing, but Kraft rebuffed their efforts.

¶34 We have held that delay in responding to discovery responses can itself be prejudicial, presuming that the delay actually impacts the case. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177 (citing *First Bank (N.A.)—Billings v. Heidema*, 219 Mont. 373, 711 P.2d 1384 (1986)). More importantly, when a failure to comply with discovery procedures effectively halts the discovery process, it results in impermissible prejudice to the opposing party. *Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co. Inc.*, 2005 MT 254, ¶ 78, 329 Mont. 38, 122 P.3d 431 (citing *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177).

¶35 We conclude in the instant case that Kraft was prejudiced by Rider's and HCMI's failure to comply with discovery procedures. We further conclude that, contrary to Rider's and HCMI's contentions, their discovery violations were not negligible, and the prejudice Kraft suffered was not self-inflicted.

¶36     Rider's and HCMI's unresponsiveness prevented Kraft from assessing the merits of the proffered defenses in order to build his case. Kraft was forced to brief and file multiple motions to obtain the requested information and to incur mounting litigation costs in the process. In addition, the District Court was forced to hold three hearings and to issue half a dozen orders regarding the discovery dispute. Furthermore, although Kraft was awarded attorney's fees on two occasions, he maintained that those fees were insufficient to cover his true costs of this dispute.

¶37     Finally, while not one of the three criteria set forth in *Xu* and *Smith* regarding sanctions under M. R. Civ. P. 37(b), courts may consider a party's disregard of the court's orders and authority when imposing sanctions. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177-78. To that end, we have stated that dismissal is appropriate where counsel or a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with court orders enforcing the rules, or they have acted in flagrant disregard of those rules. *Jerome v. Pardis*, 240 Mont. 187, 192, 783 P.2d 919, 922 (1989).

¶38     Here, Rider and HCMI ignored multiple court orders relating to the discovery dispute and repeatedly blamed their attorneys for their own failure to comply. As Kraft points out in his brief on appeal, this is not simply a case where the client provided information to his attorney and the attorney failed to submit it to the court or the opposing party. While Cooley is not blameless in this matter, it is uncontested here that Rider and HCMI never provided the requested information to their attorneys. And, on more than one occasion, the District Court characterized their conduct as "stalling." Consequently,

13

we conclude that Rider's and HCMI's disregard of the court's orders was willful, not inadvertent, and that the court was justified in imposing such severe sanctions upon them.

¶39   Accordingly, we hold that the District Court did not abuse its discretion when it entered a default judgment for Kraft as a discovery sanction.

**Issue 2.**

¶40   *Whether the District Court abused its discretion when it refused to set aside the sanction orders.*

¶41   On April 11, 2011, the District Court entered default judgment against Rider and HCMI.  Thereafter, on April 15, 2011, Rider and HCMI filed a motion for relief wherein they argued that there was good cause for their delay in providing the requested discovery because their attorney, Cooley, had retired from the active practice of law and moved to Arizona.  They claimed in their motion that these facts amounted to excusable neglect under M. R. Civ. P. 60(b), thereby justifying relief from the court's order.

¶42   On May 2, 2011, Rider and HCMI filed a "Motion to Set Aside" asking the court to reconsider and enter an order that would allow the case to be adjudicated on the merits. They argued in their motion that the default judgment was unjust because it punished them for Cooley's "misfeasance and malfeasance."  The only legal citation in their motion was in a footnote claiming that the motion was filed pursuant to M. R. Civ. P. 54(b) and 59(e).

¶43   In an order dated June 3, 2011, the District Court denied Rider's and HCMI's May 2, 2011 motion.  The Court noted that M. R. Civ. P. 59(e) was not appropriate grounds for a motion to set aside in this case, and if it were, the motion was untimely

14

because it was not filed within 10 days of the court's April 11, 2011 order. With respect to the argument that the default judgment was unjust because it punished Rider and HCMI for Cooley's gross neglect, the court held that the appropriate standard is that neglect of an attorney is attributable to the client unless the attorney completely abandoned the client. Finding that Cooley had not abandoned Rider and HCMI, the court denied the motion. In addition, in a subsequent order, the court summarily denied Rider's and HCMI's earlier motion for relief.

¶44 Rider and HCMI now argue on appeal that the District Court's reasons for refusing to set aside the default judgment were legally erroneous. First, Rider and HCMI argue that the court erred in determining that their Motion to Set Aside was untimely under M. R. Civ. P. 59(e). Rider and HCMI contend that M. R. Civ. P. 59 does not apply here because the timing provisions of that Rule apply to final judgments, not to interlocutory rulings like the court's April 11, 2011 Order. However, in direct contradiction to this argument made on appeal, Rider and HCMI specifically cited to the timing provisions of M. R. Civ. P. 59(e) in their Motion to Set Aside, and it was to this citation that the District Court referred in its order.

¶45 As the District Court noted, M. R. Civ. P. 59(e) is not appropriate grounds for a motion to set aside filed by a party because that Rule relates to an order for a new trial issued on the court's own initiative within 10 days of the entry of judgment. And, as the court further noted, in addition to there being no motion for a new trial in this case, more than 10 days had elapsed between the District Court's default judgment and Rider's and HCMI's Motion to Set Aside, thus any such motion would have been untimely.

15

¶46 Rider and HCMI also cited to M. R. Civ. P. 54(b) in their Motion to Set Aside contending that because the District Court's order "did not fully adjudicate all claims against all parties," it could be revised at any time. M. R. Civ. P. 54(b) provides that

> [w]hen multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and *upon an express direction for the entry of judgment. In the absence of such determination and direction*, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. [Emphasis added.]

¶47 Thus, under this Rule, in the absence of an express direction or the entry of judgment, a court's order adjudicating less then all claims against all parties could be revised at any time as Rider and HCMI suggest. In this case, however, the court did expressly direct entry of default judgment against Rider and HCMI in its April 11, 2011 order. Furthermore, Kraft filed and served a Notice of Entry of Judgment to that effect on April 14, 2011. Thus, the court's order could not be revised "at any time."

¶48 Second, Rider and HCMI claim that the District Court applied the wrong legal standard in denying their motions. In its June 3, 2011 order, the court pointed out that the neglect of an attorney is attributable to the client unless the attorney completely abandons the client, which the court found had not happened in this case. Rider and HCMI contend that total abandonment is not the standard for gross neglect.

¶49 The general rule is that neglect by an attorney is attributable to the client. *Myers v. All West Transport,* 235 Mont. 233, 236, 766 P.2d 864, 866 (1988). Nevertheless,

16

Montana courts recognize an exception to the general rule where an attorney, after making a general court appearance, "totally abandoned his clients and disappeared from sight." *Lords v. Newman*, 212 Mont. 359, 367-68, 688 P.2d 290, 295 (1984). We have refused to apply the *Lords* exception, however, where an attorney failed to act in response to numerous requests by opposing counsel or delayed filing answers and other documents, holding this to be "a type of neglect which is properly attributable to a client, and which we distinguish from the abandonment in *Lords*." *In re Marriage of Castor*, 249 Mont. 495, 500, 817 P.2d 665, 667-68 (1991) (quoting *Paxson v. Rice*, 217 Mont. 521, 525, 706 P.2d 123, 126 (1985)).

¶50 In this case, Cooley did not totally abandon Rider and HCMI. He continued to act as counsel throughout the proceedings even though he, at one point, claimed he was withdrawing. Cahalan, who came on as counsel just prior to the entry of default judgment, continued to assert that he was merely the "cardboard cut-out" and that Cooley remained on as counsel for the parties.

¶51 In addition, the "neglect" in this case is exactly the type that is properly attributable to a client—Cooley failed to act in response to numerous requests by opposing counsel or delayed filing answers and other documents. Furthermore, as we noted in the previous issue, it was not just Cooley that was at fault, Rider and HCMI failed to provide the requested discovery to their attorneys.

¶52 While the District Court set forth its reasons for denying Rider's and HCMI's May 2, 2011 Motion to Set Aside, the court summarily denied Rider's and HCMI's earlier motion for relief wherein Rider and HCMI had made similar arguments regarding

neglect by their attorney. Their earlier motion for relief differed from their Motion to Set Aside in that they relied on M. R. Civ. P. 60(b), stating that excusable neglect justified relief from the court's order.

¶53 Rider and HCMI failed to specifically state in their motion under what subsection of M. R. Civ. P. 60(b) they sought relief. Although they quoted M. R. Civ. P. 60(b) in its entirety, the only grounds for relief they referred to in their motion was "excusable neglect" which is found in subsection (b)(1) of the Rule:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect* . . . . [Emphasis added.]

¶54 Since the court had already denied similar arguments made by Rider and HCMI on the basis that "neglect of an attorney is attributable to the client," the court's denial of this motion in summary fashion was not an abuse of discretion.

¶55 Accordingly, we hold that the District Court did not abuse its discretion when it refused to set aside the sanction orders.

### Issue 3.

¶56 *Whether the District Court erred as a matter of law in calculating damages.*

¶57 Rider and HCMI argue that the amount of damages Kraft claimed in this case are largely self-inflicted because rather than sell the motor coach after the first year of use as the parties originally agreed and after it had been newly refurbished by the factory, Kraft unilaterally decided to keep it and use it for another season. Rider and HCMI further argue that when faced with a loss, Kraft had the obligation to take reasonable steps to

18

mitigate that loss, which in this case would mean selling the motor coach. Since he did not do so, the District Court should have deemed the motor coach sold for purposes of calculating damages. Rider and HCMI maintain that by not taking Kraft's expectancy and his intentional and unexcused failure to mitigate into account, the District Court entered a judgment much higher than the law allows, and which amounts to a substantial windfall for Kraft.

¶58 Kraft points out that Rider and HCMI did not offer any proof that Kraft failed to mitigate his damages. He further points out that the obligation to mitigate damages does not require that he sell the motor coach at a loss. To that end, he asserts that he was, and still is, unable to sell the motor coach for what is owed on it.

¶59 As a general rule, plaintiffs have the burden of proving, by competent evidence, the amount of damages to which they are entitled. *Performance Machinery v. Yellowstone Mountain Club*, 2007 MT 250, ¶ 34, 339 Mont. 259, 169 P.3d 394; *see also* § 26-1-401, MCA ("The initial burden of producing evidence as to a particular fact is on the party who would be defeated if no evidence were given on either side.").

¶60 The duty of the injured party to reduce or mitigate damages "is a positive duty, within limits . . . ." *Diede v. Davis*, 203 Mont. 205, 214-15, 661 P.3d 838, 843 (1983) (citing *Harrington v. Holiday Rambler Corp.*, 176 Mont. 37, 42, 575 P.2d 578, 581 (1978); *Spackman v. Ralph M. Parsons Co.*, 147 Mont. 500, 505, 414 P.2d 918, 921 (1966)). A " 'damaged party is only expected to do what is reasonable under the circumstances and need not embark upon a course of action which may cause further

detriment to him.' " *Gierke v. Walker*, 279 Mont. 349, 355, 927 P.2d 524, 527 (1996) (quoting *Romain v. Earl Schwartz Co.*, 238 Mont. 500, 504, 779 P.2d 54, 56-57 (1989)).

¶61 "The fact that a judgment is entered by default does not abrogate the requirement that the damages awarded be reasonable and clearly ascertainable." *Watson v. West*, 2009 MT 342, ¶ 37, 353 Mont. 120, 218 P.3d 1227 (citing *Johnson v. Murray*, 201 Mont. 495, 506, 509, 656 P.2d 170, 175, 177 (1982)). Speculative damages that are not clearly ascertainable are not recoverable. *Watson*, ¶ 18 (citing *Hallenberg v. General Mills Operations Inc.*, 2006 MT 191, ¶ 32, 333 Mont. 143, 141 P.3d 1216).

¶62 In this case, the District Court awarded Kraft $74,153.93 in damages. To arrive at that figure, the court took the increased principal amount of the loan resulting from Rider's inflation of the purchase price ($68,958.00) and added to that amount the amount of interest charged by the bank on the increased principal through the date of judgment ($19,128.96). The court then subtracted from that total the amount Rider had paid to the bank during the first year of the loan ($13,933.03), for a total damages award of $74,153.93. We conclude that the amount of damages awarded to Kraft in this case were not speculative, but were reasonable and clearly ascertainable.

¶63 Rider and HCMI failed to show that the District Court's factual determinations regarding damages were clearly erroneous. Rider and HCMI did not present any witnesses or relevant evidence at the hearing on damages. In addition, their counsel only briefly cross-examined Kraft's damages expert regarding the issue of interest.

¶64 Accordingly, we hold that the District Court did not err as a matter of law in calculating damages.

**Issue 4.**

¶65 *Whether the District Court failed to properly calculate and award prejudgment interest.*

¶66 In its July 14, 2011 Findings of Fact, Conclusions of Law and Order, the District Court concluded that the actual damages for HCMI's and Rider's breach of contract "is the amount of the discount that was not disclosed to Kraft and retained by HCMI, plus prejudgment interest at the various rates set forth in the loan agreement, minus any payments on the loan made by Rider." The court also determined that "[t]his conclusion avoids the double payment of interest problem identified by HCMI, but also resolves HCMI's claim that the damages amount is not definitive enough for an award of pre-judgment interest."

¶67 In his cross appeal, Kraft contends that the District Court erred in considering the interest charged by the bank on the increased principal in the amount of $19,128.96 as prejudgment interest. He maintains that that amount was not prejudgment interest, but was instead part of the actual damages suffered by him because he was obligated to pay that amount to the bank based on Rider's misconduct. Hence, Kraft argues that in addition to the interest that was part of the loan from the bank, he is entitled to an award of prejudgment interest at the statutory rate of 10% on the $88,086.96 (the excess amount of the loan plus the interest on that loan charged by the bank).

¶68 In their reply brief on appeal, Rider and HCMI did not offer any response or argument in opposition to Kraft's cross-appeal for prejudgment interest. They did not even argue that Kraft's claim that prejudgment interest should be calculated on the

amount of $88,086.96, did not take into account the $13,933.03 Rider paid to the bank during the first year of the loan.

¶69 The measure of damages for a tort is the amount which will compensate for all the detriment proximately caused by the tort, whether it could have been anticipated or not. *Castillo v. Franks*, 213 Mont. 232, 240, 690 P.2d 425, 429 (1984) (citing § 27-1-317, MCA). We have previously stated that "prejudgment interest is to be awarded unless either the law or the creditor prevents the payment of principal." *Byrne v. Terry*, 228 Mont. 387, 391, 741 P.2d 1341, 1343 (1987) (citing *Price Building Services, Inc. v. Holms*, 214 Mont. 456, 468-69, 693 P.2d 553, 559-60 (1985)). The fact that a claim is disputed does not make it uncertain and therefore incapable of supporting an award of prejudgment interest. *Byrne*, 228 Mont. at 390, 741 P.2d at 1343 (citing *Safeco Ins. Co. v. Lovely Agency*, 215 Mont. 420, 425, 697 P.2d 1354, 1357 (1985)).

¶70 Section 27-1-211, MCA, sets forth the criteria for an award of prejudgment interest as follows:

> **Right to Interest.** Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

Thus, a party must satisfy the following three criteria to be eligible for an award of prejudgment interest under § 27-1-211, MCA: (1) an underlying monetary obligation; (2) the amount of recovery must be certain or capable of being made certain by calculation; and (3) the right to recover must vest on a particular day. *Byrne*, 228 Mont. at 390, 741

22

P.2d at 1343 (citing *Agrilease Inc. v. Gray*, 173 Mont. 151, 160, 566 P.2d 1114, 118-19 (1977)).

¶71   We have also stated that

> "[s]ection 27-1-211, MCA, is not a discretionary statute.   Rather it mandates interest as long as the legal situation fits within the broad guidelines of the statute.  Determining whether a cause of action fits within the framework of the statute, particularly the question of whether the claim is determined or can be determined by calculation, is not always an easy one.  However, the overriding purpose of the statute can be best preserved if it is remembered that its purpose is to fully compensate the injured party for the loss of use of his money during the period in which a valid claim was not paid.  We believe . . . that the objective of fully compensating the injured party, and that is the primary objective of the prejudgment interest statute, should predominate over other equitable considerations.   If the legislature has chosen to provide a right to prejudgment interest (Section 27-1-211), the primary objective of the courts, where possible, should be to award prejudgment interest."

*Byrne,* 228 Mont. at 391, 741 P.2d at 1343-44 (quoting *Price,* 214 Mont. at 469, 693 P.2d at 560).

¶72   We agree with Kraft that he is entitled to prejudgment interest in this case and we remand to the District Court for determination of the amount of prejudgment interest to be awarded.   In addition, since there was no contract between Kraft and Rider establishing a rate of interest, the prejudgment interest should be calculated at the statutory rate of 10%.   Section 25-9-205, MCA ("interest is payable on judgments recovered in the courts of this state and on the cost incurred to obtain or enforce a judgment at the rate of 10% per year").

¶73   We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

23

/S/ JAMES C. NELSON


We Concur:


/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS