FILED

February 9 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0345

DA 15-0345

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 28

GAIL STAFFORD,

       Plaintiff and Appellee,

  v.

CHARLES FOCKAERT,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                 In and For the County of Butte/Silver Bow, Cause No. DV 12-302
                 Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Charles Fockaert, Self-Represented, Somers, Montana

       For Appellee:

           Quentin M. Rhoades, Nicole L. Siefert, Rhoades & Siefert, P.L.L.C.,
           Missoula, Montana

                        Submitted on Briefs:  January 6, 2016

                                 Decided:  February 9, 2016

Filed:

                               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Charles Fockaert appeals pro se from an order issued by the Second Judicial District Court, Silver Bow County, granting default judgment in favor of Gail Stafford and awarding her prejudgment interest. We affirm.

¶2      We address the following issues on appeal:

> *1. Whether the District Court abused its discretion by entering a default judgment in favor of Stafford as a sanction for Fockaert's failure to comply with the court's order requiring mediation.*

> *2. Whether the District Court erred in awarding prejudgment interest.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      Stafford initiated this action against Fockaert on September 12, 2012, alleging that Fockaert defrauded her out of $100,000. Stafford and Fockaert both agree that Stafford transferred $100,000 to Fockaert with the Korea Exchange Bank in July 2010, and that in August 2010 Fockaert refused to return the money after Stafford requested that he do so.

¶4      Stafford's complaint further sets forth the following facts. On July 4, 2010, Fockaert sent an email to Stafford detailing the various ways he could invest Stafford's money, including primarily investing her funds in a gold account. Fockaert stated that he would provide Stafford with the necessary information to access her account and detail her investments. On July 19, 2010, Stafford completed a foreign wire transfer in the amount of $100,000 to Fockaert's bank account with the Korea Exchange Bank, and Fockaert received notification from the Bank that the $100,000 had been transferred. In August 2010, Fockaert visited Stafford in Montana and failed to provide any account information or documentation to Stafford regarding her investment. While Fockaert was

2

in Montana in August 2010 Stafford requested Fockaert return the full $100,000. Despite continued assurances from Fockaert that he would return her money, Fockaert has failed to return any of Stafford's $100,000.

¶5 On September 12, 2012, Stafford filed a complaint alleging claims of unjust enrichment, constructive trust, and fraud. After Stafford filed a motion for judgment on the pleadings, Fockaert moved to amend his answer. The District Court denied Fockaert's motion and granted Stafford's motion for judgment on the pleadings. Fockaert appealed the District Court's decision to this Court. We reversed the District Court and permitted Fockaert to amend his pleadings. *See Stafford v. Fockaert*, 2014 MT 51N, 374 Mont. 542.

¶6 After remand, Fockaert filed an amended answer on August 11, 2014, and the District Court entered a scheduling order setting trial for April 6, 2015. The District Court's order required that the parties participate in a mandatory settlement conference at least 45 days prior to trial.

¶7 On February 7, 2015, Stafford sent an email to Fockaert explaining that the District Court imposed mandatory mediation in its scheduling order and suggesting that the parties engage in the mediation with non-profit mediators in Missoula. Two days later, Fockaert responded, stating he would not comply with the court's order requiring mediation. Fockaert stated that "once Stafford deposed me, all possible negotiation options were off the table."

¶8 On February 23, 2015, Stafford filed a motion for sanctions, requesting the court enter a default judgment against Fockaert as a sanction for violating the District Court's

scheduling order requiring mediation. The District Court conducted a hearing on Stafford's motion on February 26, 2015. The court explained to Fockaert that it expressly required mediation in its scheduling order, and that he must attend mediation or risk a default judgment. The court explained:

> Mediation is required. It's not discretionary. Mediation must occur. All parties with settlement authority—with the ultimate settlement authority, which in this case it would be the parties themselves, are required to attend in person and participate in the mediation.
>
> .   .   .
>
> I've required this mandatory mediation consistently in my 15 years on the bench. . . . I have not ever granted a waiver of the mediation. I will not do so today, and I expect parties to go to the mediation and participate in good faith, meaning that they—that they go to the mediation with the idea to see if the matter can be resolved. And so the Court's not going to change that position.

At the close of the hearing, Fockaert indicated that he understood the court's order, and Stafford withdrew her motion for sanctions. Stafford requested that she retain the right to refile the motion, however, if Fockaert continued to interfere with the court ordered mediation process. The court granted her request.

¶9 On March 11, 2015, the District Court issued a written order, reiterating that "mediation is mandatory and both parties must participate prior to the final pretrial conference," and that Stafford withdrew her motion on the condition that should Fockaert refuse to participate in mediation Stafford would resubmit her motion.

¶10 The next day, Stafford emailed Fockaert and asked when Fockaert would be willing to conduct the mediation conference. Initially, Fockaert deflected Stafford's request for mediation by referencing his previous response to Stafford's motion for

4

default judgment wherein Fockaert contended that he did not need to mediate. This caused Stafford to inquire whether Fockaert was again refusing to mediate. Fockaert then replied that he would indeed mediate and requested that Stafford "propose possible dates for my consideration." On March 30, 2015, Stafford emailed Fockaert explaining that she had confirmed mediation for April 8, 2015, in Missoula. Fockaert responded that he had "prior engagements for April 8." Over the next couple days, Stafford attempted to schedule a mediation date with Fockaert without success. Fockaert repeatedly refused to suggest a date he could attend and remarked to Stafford that he could not "afford to lose any more income on a frivolous case because you don't know how to coordinate a meeting." Finally, Stafford emailed Fockaert stating: "Since you have failed to suggest any alternatives there's little I can do. If you care to suggest some alternatives, I'll check with my calendar and the mediator." Fockaert then emailed Stafford suggesting April 6, 2015. Stafford agreed and confirmed the mediation date with the non-profit Community Dispute Resolution Center in Missoula. On April 3, 2015, Stafford forwarded an email confirmation to Fockaert from the Community Dispute Resolution Center confirming the mediation date with the mediators for April 6, 2015.

¶11    On the morning of April 6, 2015, Stephan Edwards of the Community Dispute Resolution Center emailed Stafford informing her that he spoke with Fockaert over the weekend and Fockaert indicated he would not be attending the mediation and that the mediation was therefore cancelled. Edwards also explained that Fockaert had asked him to forward a letter to Stafford. The letter stated: "There are no issues to mediate. I'm fully prepared and looking forward to the trial." By the time Stafford received Edwards'

email informing her of the cancellation, she had driven to Missoula from Butte to participate in the mediation. Edwards subsequently submitted a sworn affidavit stating Fockaert had emailed him over the weekend and stated multiple times that he would not participate in meditation.

¶12 On April 7, 2015, Edwards emailed Stafford notifying her that Fockaert had, in fact, showed up at the mediation center on April 6. Edwards explained: "Fockaert showed up in Missoula yesterday morning for the mediation, though he did not intend to actually negotiate. He simply wanted to fulfill the letter of the Court order." Edwards further notified Stafford that Fockaert gave him another copy of the earlier letter stating: "There are no issues to mediate. I'm fully prepared and looking forward to the trial."

¶13 On April 9, 2015, Stafford renewed her motion for sanctions, requesting that the court enter a default judgment against Fockaert as a sanction for violating the District Court's scheduling order requiring mediation. After a hearing on Stafford's motion, the District Court granted default judgment in favor Stafford. The District Court awarded Stafford prejudgment interest on the judgment from July 19, 2010, the date Stafford transferred the funds to Fockaert.

¶14 Fockaert appeals.

## STANDARD OF REVIEW

¶15 We review a district court's decision to impose sanctions for failure to comply with M. R. Civ. P. 16(f) for an abuse of discretion. *Watson v. West*, 2009 MT 342, ¶ 17, 353 Mont. 120, 218 P.3d 1227. We also review the severity of the sanction imposed for an abuse of discretion. *Watson*, ¶ 17.

6

¶16 "The decision to grant or deny prejudgment interest is reviewed to determine whether the district court correctly interpreted the law." *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 13, 376 Mont. 80, 330 P.3d 1139.

## DISCUSSION

¶17 *1. Whether the District Court abused its discretion by entering a default judgment in favor of Stafford as a sanction for Fockaert's failure to comply with the court's order requiring mediation.*

¶18 M. R. Civ. P. 16(f) permits a court to impose any just sanctions, including those authorized by M. R. Civ. P. 37, on a party who fails to appear at a court ordered pretrial conference or who does not participate in good faith in the conference. M. R. Civ. P. 37 further expressly provides a court with the authority to "render[] a default judgment against the disobedient party."

¶19 In reviewing a district court's decision regarding the imposition of sanctions, we engage in a two-step inquiry: (1) "whether there was an actual failure to comply with the judicial process," and (2) "whether the severity of the sanction was appropriate." *Xin Xu v. McLaughlin Research Inst. for Biomedical Sci., Inc.*, 2005 MT 209, ¶ 21, 328 Mont. 232, 119 P.3d 100. We generally defer to the district court on both questions because the court is in the best position to determine whether the party in question has, in fact, ignored the court's order, and the extent to which the disobedient party disregarded his opponent's rights. *Richardson v. State*, 2006 MT 43, ¶ 21, 331 Mont. 231, 130 P.3d 634.

¶20 Here, Fockaert focuses on the initial inquiry: whether he actually failed to comply with the judicial process. Rather than taking issue with the severity of the sanction imposed, Fockaert argues only that the District Court lacked authority to impose the

7

sanction in the first instance. He contends that he complied with the court's order by arriving on time for the mediation in Missoula and that he did nothing to violate the court's order. By way of explanation, Fockaert offers that Edwards simply misunderstood his comments and that he always intended to participate in the mediation.

¶21 We are unpersuaded by Fockaert's argument and defer to the judgment of the District Court. The District Court was in the best position to assess the merits of Fockaert's explanation for the cancellation and to determine whether Fockaert complied in good faith with court's order requiring that the parties mediate. Before sanctioning Fockaert, the court conducted a lengthy hearing in which both parties submitted evidence. Fockaert testified and the court listened to Fockaert's explanation for the cancellation. Fockaert conceded that he told Edwards that he did not need to mediate and that he would not "negotiate" with Stafford, but that he nonetheless always intended to "mediate" and Edwards misunderstood his comments. The court also reviewed several exhibits submitted by Stafford. Those exhibits included: (1) the email communications between the parties in which Fockaert repeatedly refused to suggest a date for mediation, rejected a date proposed by Stafford, and blamed Stafford for the failure to coordinate the meeting; (2) Edwards' sworn affidavit stating that Fockaert emailed him over the weekend and stated "multiple times that he would not mediate"; and (3) the letter Fockaert gave to Edwards to forward to Stafford on the day the mediation was to occur in which Fockaert wrote, "There are no issues to mediate. I'm fully prepared and looking forward to the trial." After reviewing the evidence presented to the District Court, we conclude that sufficient evidence existed for the court to find that Fockaert failed to

8

participate in good faith in the court ordered mediation. The District Court did not abuse its discretion by imposing default judgment pursuant to M. R. Civ. P. 16(f) for Fockaert's failure to comply with the court's order.

¶22    *2. Whether the District Court erred in awarding prejudgment interest.*

¶23    The parties dispute whether Stafford is entitled to prejudgment interest, and if so, when such interest accrues. As an initial matter, both parties base their arguments on § 27-1-211, MCA, entitled "Right to interest," and not on § 27-1-210, MCA, entitled "Interest on torts." We have not previously discussed, at any length, the interplay between the two prejudgment interest statutes and decline to do so today. We merely highlight that there are these two separate prejudgment interest statutes and leave it to future parties to brief the relationship between the statutes as well as the applicability of § 27-1-210, MCA.

¶24    Section 27-1-211, MCA, provides:

> Each person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

We have explained that the statute has three requirements: "(1) an underlying monetary obligation, (2) an amount of recovery that is certain or capable of being made certain by calculation, and (3) a right to recover that vests on a particular day." *Amour v. Collection Prof'ls, Inc.*, 2015 MT 150, ¶ 24, 379 Mont. 344, 350 P.3d 71. If these elements are met an award of interest is not discretionary; instead, a trial court is required to award prejudgment interest. *New Hope Lutheran Ministry v. Faith Lutheran Church of Great*

9

*Falls, Inc.*, 2014 MT 69, ¶ 70, 374 Mont. 229, 328 P.3d 586. Section 27-1-211, MCA, requires a court to award an injured party prejudgment interest "from the particular day that the right to a sum certain in damages vests." *Dew v. Dower*, 258 Mont. 114, 126, 852 P.2d 549, 556 (1993).

¶25 Fockaert contends that Stafford's damages were uncertain until the court entered default judgment and thus prejudgment interest is inappropriate. Relying on our decision in *Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc.*, 2008 MT 2, 341 Mont. 33, 174 P.3d 948, he reasons that because he disputed Stafford's claim of fraud the damages were incapable of being made certain until after the court entered default judgment and conclusively determined liability.

¶26 We disagree. A dispute over the defendant's liability giving rise to the damages does not suffice to make damages uncertain. *Swank Enters. v. All Purpose Servs., Ltd.*, 2007 MT 57, ¶ 40, 336 Mont. 197, 154 P.3d 52. "The fact that a claim is disputed does not make it uncertain and therefore incapable of supporting an award of prejudgment interest." *Kraft v. High Country Motors, Inc.*, 2012 MT 83, ¶ 69, 364 Mont. 465, 276 P.3d 908. Rather, the statute "merely requires that the damages be certain, or capable of ascertainment by calculation." *James Talcott Constr., Inc. v. P&D Land Enters.*, 2006 MT 188, ¶ 41, 333 Mont. 107, 141 P.3d 1200.

¶27 Here, Stafford's damages were readily ascertainable. There was no factual dispute regarding whether Fockaert obtained $100,000 from Stafford and then deposited those funds in his account with the Korea Exchange Bank. That Fockaert disputed Stafford's claim of fraud does not render Stafford's damages uncertain. The statutory requirement

that the amount of Stafford's damages be certain, or capable of ascertainment by calculation, is satisfied.

¶28 Our decision in *Montana Petroleum* is not inconsistent with this conclusion. Contrary to Fockaert's understanding, *Montana Petroleum* does not stand for the proposition that so long as ultimate liability is contested prejudgment interest is inappropriate. Rather, we merely explained in *Montana Petroleum* that in cases involving breach of contract, this Court has consistently refused to award prejudgment interest where "'the amount of damages due upon breach was not clearly ascertainable until determined by the trial court.'" *Montana Petroleum*, ¶ 100 (quoting *Northern Montana Hosp. v. Knight*, 248 Mont. 310, 321, 811 P.2d 1276, 1282 (1991)). Unlike in *Montana Petroleum*, however, the damages in this case were clearly ascertainable prior to the court's entry of liability. While Fockaert contested Stafford's allegations of fraud, Fockaert agreed he received $100,000 from Stafford. Thus, though Fockaert contested the claim, he did not contest the damages arising from the claim.

¶29 We next turn to whether Stafford's right to recover the $100,000 vested on a particular day, and if so, the particular day on which that occurred. Our analysis here is guided by the court's issuance of default judgment in favor of Stafford on her claim of actual fraud. We have explained the effect of a default judgment is that "the facts alleged by the plaintiff in the complaint are deemed admitted." *Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 25, 296 Mont. 267, 989 P.2d 309 (citing 10 Moore's Federal Practice § 55.12(1) (3d ed. 1999)) (ellipsis omitted). In her complaint, Stafford alleged that Fockaert committed actual fraud. "The elements of actual fraud 'hinge on the knowledge

11

and intent of the defendant.'" *McCulley v. U.S. Bank*, 2015 MT 100, ¶ 34, 378 Mont. 462, 347 P.3d 247 (quoting *Durbin v. Ross*, 276 Mont. 463, 470, 916 P.2d 758, 762 (1996)). Consequently, Stafford alleged in her complaint that Fockaert knew he would not invest Stafford's funds and intended to deceive Stafford prior to the transfer of the funds. Stafford further alleged that the elements of fraud were met on July 19, 2010, when Fockaert received the $100,000 from Stafford and thereby caused her injury.

¶30 Accepting Stafford's allegations as true, the underlying monetary obligation due to Stafford was sum certain, in the amount of $100,000, on July 19, 2010, and Stafford had a right to recover that sum certain on that particular day. The elements of fraud were satisfied as soon as Stafford was injured by her reliance on Fockaert's misrepresentation, which occurred when Stafford transferred $100,000 into Fockaert's account on July 19, 2010. Since that date, Stafford has had a right to recover, and Fockaert has been obligated to return, the fraudulently obtained funds.

¶31 Furthermore, accruing the interest from July 19, 2010, is fully consistent with the purpose of prejudgment interest. Prejudgment interest is "simply an ingredient of full compensation that corrects judgments for the time value of money." *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008). It reflects the victim's loss due to her inability to use the money for a productive purpose and serves to compensate the injured party for the loss of use of her money "from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury th[e] damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2, 107 S. Ct. 702, 706 (1987). Stafford has shown that her cause of action accrued on July 19, 2010, and she has been

denied the use of her money for a productive purpose from that time. Using any other date for accrual would run counter to the purpose of prejudgment interest and would not fully compensate Stafford for her loss. Therefore, we conclude that Stafford is entitled to prejudgment interest beginning on July 19, 2010, which is the particular day that her right to a sum certain in damages vested.

¶32    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE