FILED

06/21/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0491

DA 21-0491

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 119

LILY M. SMITH and VERNON T. LINDEMULDER,

Petitioners and Appellees,

v.

SAMUEL B. LINDEMULDER, individually and as
Trustee of the Alice M. Lindemulder Trust,

Respondent and Appellant,

and

DANIEL G. LINDEMULDER, individually and as
Trustee of the Alice M. Lindemulder Trust,

Respondent and Appellee.

APPEAL FROM:   District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DV 19-545
Honorable Matthew J. Wald, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim B. Lippert, Jim Lippert, Attorney at Law, P.C., Big Timber, Montana

For Appellees:

Mark D. Parker, Parker, Heitz, Cosgrove, Billings, Montana
(for Lily M. Smith and Vernon T. Lindemulder)

David J. Dietrich, Jeffrey E. Janca, Dietrich & Associates, P.C., Billings,
Montana (for Lily M. Smith and Vernon T. Lindemulder)

Daniel L. Snedigar, Bruce O. Bekkedahl, Patten, Peterman, Bekkedahl &
Green, PLLC, Billings, Montana (for Daniel G. Lindemulder)

Ariel Overstreet-Adkins, Bluebird Law, Billings, Montana (for Trustee)

Submitted on Briefs:  April 20, 2022

Decided:  June 21, 2022

Filed:

Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1 Samuel Lindemulder (Sam) appeals the Twenty-Second Judicial District Court's Order Granting Motion to Approve Settlement Agreement (Order), in which the court approved a settlement agreement reached in mediation (Agreement) involving Sam, his brother Dan Lindemulder (Dan), and their siblings Lily Smith and Vernon Lindemulder (Petitioners). The Agreement resolved claims involving the Alice M. Lindemulder Trust (Trust), established by the parties' mother, which held approximately 2,151 acres of land in Stillwater County. Sam contends he is the rightful owner of three sections of land held by the Trust. Sam raises four issues, which we reformulate as follows:

1. *Did the District Court err by determining Sam had consented to the Agreement?*

2. *Did the District Court err by determining Sam's Contract for Deed was unenforceable?*

¶2 We affirm, and remand for the limited purpose of determining attorney fees incurred on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In February 1990, Sam contracted ("Contract for Deed" or "Contract") to purchase from his parents three sections of land, Sections 8, 9, and 20 of Township 1 North, Range 20 East, totaling about 1,660 acres, for $50,000. A Notice of Purchaser's Interest was signed and recorded. As scheduled under the Contract, the final payment would have been due February 2005. In 1997, Sam's mother created the Trust, designating her children as primary beneficiaries, and transferred land into the Trust, including the three sections

3

subject to Sam's Contract for Deed.[1] These sections were transferred "subject to the purchase interest of Sam under that certain Contract for Deed dated February 7, 1990." Sam continued to run cattle and otherwise personally use the three sections under contract at all times relevant to this matter. In 2014 Sam's mother passed away, and Sam and Dan became co-trustees of the Trust. In September 2019, Petitioners filed the instant action, alleging they had not received any distributions from the Trust or been provided an explanation from Sam or Dan, as trustees, regarding the failure to make distributions.

¶4      Sam and Dan were jointly represented by counsel, and the matter was litigated for over a year. A mediation was scheduled for December 1, 2020, and due to the COVID-19 pandemic, was conducted remotely. The mediation resulted in the parties reaching a settlement, and the Agreement was executed by all parties about 30 days later. Pursuant to the Agreement, Sam was permitted to run cattle on the property until June 15, 2021, and would be reimbursed $1,773 for property taxes he had paid. The Agreement provided that Sam and Dan would step down as trustees and an independent successor trustee would be appointed to market and sell the Trust property, including the sections subject to the Contract, with the proceeds to be distributed to the beneficiaries.

¶5      Petitioners filed a motion to approve the Agreement, and a hearing was held on April 15, 2021. However, Sam contested the Agreement; Dan, his co-trustee, did not. Sam argued the Agreement was not enforceable because he lacked capacity to enter it and had

---

[1] The additional property was Section 17 of Township 1 North, Range 20 East, and Lots 1 and 4 of the Far View Subdivision, the dispositions of which are not at issue here.

been subjected to undue influence. Also, for the first time, Sam contended he owned or otherwise held interest in the three sections covered by the 1990 Contract for Deed.

¶6 Sam testified at length during the hearing. He stated that, a few days prior to the mediation, he went to the hospital due to experiencing COVID-19 symptoms. He was discharged the same day, with his treating doctor instructing him to rest as much as possible. Sam stated he attended the mediation from bed on his cell phone with only audio capability, and a poor connection made it difficult for him to understand what was happening. Because he was ill with COVID-19, he was fatigued and drifted in and out of sleep during the mediation, which caused his incapacity. Regarding undue influence, Sam claimed that Dan and their joint counsel pressured him into signing the Agreement by saying he would be "sued" if he did not sign it. He stated he signed the Agreement only "under protest" because of his disagreement with it and because of the undue influence of his brother and their mutual attorneys. Sam also explained that, after signing the Agreement but prior to the hearing, he discovered, in a box his mother had left for him, the warranty deed to the three sections of land he had contracted to purchase. Sam recorded the deed in February 2021.[2]

¶7 Cross-examination of Sam established that he was represented by counsel at the mediation and, despite any fatigue he may have been suffering, he had contributed to the mediation, including requesting reimbursement of the property taxes he had paid.

_____

[2] The precise date Sam signed the Agreement is not provided, but all parties agree this occurred in January 2021. In any event, the Agreement was clearly made effective the date of the mediation, December 1, 2020.

5

Moreover, Sam's testimony established that, while he did not necessarily agree the three sections he claimed to own *should* have been included in the settlement, he nonetheless understood at the time that their disposition was, in fact, included in the negotiations and the ultimate settlement reached. Regarding undue influence, Sam was unable to articulate how the statements by Dan and their mutual counsel regarding future litigation that would occur if he did not sign the Agreement—effectively a continuation of the litigation he was already a party to—had exerted "undue" influence on him, offering only that he did not like to be sued. Finally, cross-examination established that, despite his claim to have acquired Sections 8, 9, and 20 of the Trust property as of 2005, Sam had entered into, as a co-trustee, a 2017 contract with a wind energy company to install wind turbines on the Trust land, a transaction in which he represented that those sections were owned by the Trust.

¶8    The District Court found Sam had been represented by competent counsel throughout the proceedings, and that, despite suffering from COVID-19 during the mediation, "showed a clear understanding of what property was involved in the Trust and what was going to be done with it." The District Court noted that Sam signed the Agreement a month after the mediation, when his COVID-19 symptoms had dissipated. As to undue influence, the District Court found "the threat of a lawsuit to a person in the middle of litigation is simply not so coercive that Sam can be considered to have been *forced* to agree to and then sign" the Agreement (emphasis in original), and noted the

6

Agreement resolved the potential litigation Sam expressed concerned about.[3] The court accordingly rejected Sam's competency and undue influence contentions.

¶9 The District Court also rejected Sam's position that the Contract for Deed should be enforced. It first concluded that, pursuant to § 27-2-202, MCA, any applicable statute of limitations for an action to enforce the Contract had expired. The District Court found that, although there was evidence Sam made some payments on the Contract, there was no evidence the seller considered the contract satisfied, and that "despite his testimony that he owns the land, Sam's actions indicate that he did not consider the [C]ontract fulfilled either." Although Sam was both a beneficiary and trustee of the Trust, and clearly knew the contested sections of land had been placed in the Trust, he nonetheless took no action to claim ownership of the property. The District Court found that, well after the Contract would have been fulfilled, Sam treated the land as Trust property when he contracted with the wind energy company, and later, when signing the Agreement, which did not recognize his claimed interest. The District Court reasoned Sam had acted inconsistently with any interest he may have had, and concluded Sam had waived any right in the property by his course of conduct. For many of the same reasons, the court also concluded the doctrine of laches barred Sam's contentions regarding the Contract, reasoning that "Sam's unexplained delay in asserting his right would make enforcement of the asserted right

---

[3] While the District Court did not explicitly mention it, this is presumably a reference to the Agreement's provision mutually releasing Sam, the Trust, and the other parties from any suit related to the Trust or its property.

7

inequitable under the circumstances" and that "the law does not allow Sam to wait until—literally—the last moment to assert his property rights under the [C]ontract for [D]eed."

¶10 Sam appeals.

## STANDARDS OF REVIEW

¶11 "Settlement agreements are contracts, and are subject to the provisions of contract law." *Murphy v. Home Depot*, 2012 MT 23, ¶ 8, 364 Mont. 27, 270 P.3d 72 (citing *Dambrowski v. Champion International Corp.*, 2003 MT 233, ¶ 9, 317 Mont. 218, 76 P.3d 1080). "An agreement is binding if made by an unconditional offer, and accepted unconditionally." *Murphy*, ¶ 8 (citing *Hetherington v. Ford Motor Co.*, 257 Mont. 395, 399, 849 P.2d 1039, 1042 (1993)). In equitable matters, such as this one, we will uphold a district court's findings of fact unless they are clearly erroneous. *See Pense v. Lindsey*, 2003 MT 182, ¶ 12, 316 Mont. 429, 73 P.3d 168 (citing *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, 24 P.3d 211). We view the evidence in the light most favorable to the prevailing party and assign witnesses the same credibility as did the district court. *In re Estate of Harms*, 2006 MT 320, ¶ 12, 335 Mont. 66, 149 P.3d 557 (citing *Bradshaw*, ¶ 11). A district court's conclusions of law are reviewed to determine whether they are correct. *Harms*, ¶ 12 (citing *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, 28 P.3d 467).

## DISCUSSION

¶12 *1. Did the District Court err by determining Sam had consented to the Agreement?*

¶13 Sam argues the District Court erred by holding he consented to the Agreement, free from undue influence. "Undue influence negates the free consent necessary for the proper

8

formation of a contract" and permits the contract's recission by the party influenced by it. *Adams v. Allen*, 209 Mont. 149, 153, 679 P.2d 1232, 1235 (1984) (citations omitted); § 28-2-1711, MCA. Undue influence is defined as:

> (1) the use by one in whom a confidence is reposed by another person or who holds a real or apparent authority over the other person of the confidence or authority for the purpose of obtaining an unfair advantage over the other person;
>
> (2) taking an unfair advantage of another person's weakness of mind; or
>
> (3) taking a grossly oppressive and unfair advantage of another person's necessities or distress.

Section 28-2-407, MCA. The party claiming undue influence bears the burden of proof. *Adams*, 209 Mont. at 153, 679 P.2d at 1235.

¶14 Sam does not specifically contest any of the District Court's factual findings, but argues he was unduly influenced in several ways. He argues the conditions under which he attended the mediation—remotely and ill with COVID-19—prevented him from understanding the mediation's terms and properly participating, and therefore any consent he gave was the result of "the parties and his counsel taking an unfair advantage of [his] 'weakness of mind.'" He also argues that Petitioners' counsel, his brother Dan, and their joint counsel threatened him with legal action if he did not agree to the mediation's terms. Further, Sam contends that this undue influence "continued after the mediation" up to his signing of the Agreement, because his attorneys continued to "pressure[]" him by referring to future litigation. However, these arguments do not justify a conclusion the District Court erred in determining Sam validly consented to the Agreement.

9

¶15 The District Court's findings regarding the mediation are backed by ample evidence and support the conclusion that Sam was competent throughout the process, despite the quality of the phone connection and Sam's physical condition with COVID-19. Sam's 2017 dealings with the wind energy company clearly establish that he knew the Trust's corpus—the disposition of which was the subject of the mediation—included Sections 8, 9, and 20, which he then represented were owned by the Trust. Despite filing an affidavit asserting he did not know the disposition of Sections 8, 9, and 20 was included in the mediation, Sam later testified at the hearing that he did, in fact, know the mediation involved Sections 8, 9, and 20, but that he simply "didn't agree" they should have been a part of the settlement.

¶16 While severe illness could be a factor contributing to a "weakness of mind" making one vulnerable to undue influence, Sam has not met his burden of establishing his condition had deteriorated to that point. *See In re Marriage of Gorton*, 2008 MT 123, ¶¶ 39-42, 342 Mont. 537, 182 P.3d 746. Although ill with COVID-19, Sam was able to—and did—actively participate in the mediation, both personally and through counsel. There is no expert testimony in the record regarding the severity of Sam's medical condition, but it is undisputed that he was examined by a doctor several days before the mediation and advised to rest. While Sam and his wife testified he was fatigued and dozed off at times during mediation, his testimony also established that he understood the mediation's key terms, despite not necessarily liking them. As noted by the District Court, an important fact is that Sam signed the Agreement about a month after the mediation, leaving him ample opportunity to consider and raise any objections he had to its terms or scope.

10

¶17    Finally, Sam's argument concerning the threat of future litigation is not persuasive. Clearly, Petitioners would likely have continued to prosecute their action if settlement negotiations had failed. Sam has not presented evidence sufficient to warrant a finding that *his own* counsel's advice regarding the ramifications of failing to sign the Agreement—an ordinary concern—constituted a threat or coercion. While the possibility of litigation carries a certain amount of pressure, we agree with the District Court that "the threat of a lawsuit to a person in the middle of litigation is simply not so coercive" that it can be said to overcome one's capacity to enter into a settlement agreement. Under such thinking, most settlement agreements would be rendered unenforceable.

¶18    The District Court's findings of fact regarding Sam's capacity to enter the Agreement are not clearly erroneous, and Sam has not met his burden to establish that he was unduly influenced when executing the Agreement. *Pense*, ¶ 12; *Adams*, 209 Mont. at 153, 679 P.2d at 1235. We affirm the District Court's conclusion that Sam validly consented to the Agreement. *Harms*, ¶ 12.

¶19    *2. Did the District Court err by determining Sam's Contract for Deed was unenforceable?*

¶20    The District Court concluded Sam's Contract for Deed was not enforceable because the applicable statute of limitations had expired and that, even if not, enforcement was proscribed by Sam's implied waiver through his course of conduct, as well as the doctrine of laches. Sam provides appellate arguments challenging each of these bases for the District Court's conclusion. However, we resolve the issue by applying the doctrine of laches, and do not address Sam's arguments regarding waiver or the statute of limitations.

11

¶21 "The doctrine of laches is an equitable remedy . . . 'by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting a claim, when the delay or negligence has prejudiced the party against whom relief is sought.'" *Algee v. Hren*, 2016 MT 166, ¶ 8, 384 Mont. 93, 375 P.3d 386 (quoting *Anderson v. Stokes*, 2007 MT 166, ¶ 19, 338 Mont. 118, 163 P.3d 1273). "The doctrine of laches applies when a party has been negligent in asserting a right, and where there has been an unexplained delay of such duration as to render enforcement of the asserted right inequitable." *Peterson v. Hopkins*, 210 Mont. 429, 439, 684 P.2d 1061, 1066 (1984) (citations omitted). The elements of laches are: "(1) the party against whom the defense is asserted lacked diligence in asserting a claim; and (2) that lack of diligence resulted in prejudice to the party asserting the defense." *Algee*, ¶ 8 (citing *Wicklund v. Sundheim*, 2016 MT 62, ¶ 40, 383 Mont. 1, 367 P.3d 403). The doctrine's purpose is to "discourage stale demands by the court refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in assertion of adverse rights has occurred." *Algee*, ¶ 8 (quoting *Montanans for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶ 25, 334 Mont. 237, 146 P.3d 759). Although elapsed time is relevant in considering laches' elements, the principal consideration is the inequity of permitting a claim to be enforced. *Cole v. State ex rel. Brown*, 2002 MT 32, ¶ 25, 308 Mont. 265, 42 P.3d 760.

¶22 The District Court found the Trust was created in 1997, and that Sections 8, 9, and 20 were then transferred into the Trust, subject to Sam's Contract for Deed. The final payment under the Contract was scheduled for February 2005. The District Court found, and Sam does not contest, that he was a beneficiary of the Trust, and since his mother's

12

2014 passing, a co-trustee. If, by 2005, Sam had fulfilled his obligations under the Contract—for which there was no evidence from the Trust and which the District Court noted was "by no means a certainty"—he obviously would have known that the Trust continued to hold ownership of the property and that some action was necessary to effectuate transfer of the property interest to himself personally. Instead, Sam not only failed to raise the issue or otherwise act, he affirmatively represented that Sections 8, 9, and 20 were owned by the Trust when, on behalf of the Trust, he negotiated a contract with the wind energy company years later in 2017. The facts here distinguish the holdings in *Peterson v. Hopkins* and *Carter v. Badrock Rural Fire Dist.*, 2021 MT 280, 406 Mont. 174, ___ P.3d ___, on which Sam relies for his argument that he had no legal duty to seek a judicial determination of the section's ownership until his ownership was challenged. Any claim that he owned the property was indeed "challenged" by the Trust's continued ownership claim and use of the property long after the Contract was supposed to have been satisfied, by his own representations concerning the Trust's ownership of it long after 2005, and, as established above, his knowing settlement of the disposition of the property in the mediation herein. All of these were directly hostile to his claimed interest. *See generally Carter*, ¶ 24.

¶23     It was only after his alleged satisfaction of the Contract in 2005, after his mother's passing in 2014, after the Trust's post-2005 use of the property, after his contrary representations, after Petitioners' requests for disbursements from the Trust, after litigation had been conducted, after mediation, and after execution of a settlement agreement disposing of the property, that Sam asserted any claim of ownership of Sections 8, 9, and

13

20. Petitioners initially waited for Sam to act as a co-trustee, then litigated and settled this matter on the understanding those sections were trust property. Allowing Sam to now contest the Trust's ownership of a substantial part of the corpus would effectively destroy the Agreement and severely prejudice the Petitioners and other Trust beneficiaries, an inequity that would result solely from Sam's actions. *Cole*, ¶ 25. The elements of laches are clearly established. *Algee*, ¶ 8. The District Court's findings in that regard are not clearly erroneous, and its conclusions of law are correct. *Pense*, ¶ 12; *Harms*, ¶ 12.

¶24 We recognize Sam has economic and sentimental ties to the contested property, and it is regrettable that steps were not taken long ago to quiet title to the property, if such were warranted. However, under the circumstances as they transpired, it is now too late. We affirm the District Court's Order holding the Agreement is valid and enforceable. Because the Agreement provides, should litigation become necessary to enforce its provisions, that the prevailing party is entitled to attorney fees, we also remand the matter for the limited purpose of determining a reasonable appellate fee award for Petitioners.

¶25 Affirmed and remanded.

/S/ JIM RICE

We concur:
/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

14