FILED

07/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0487

DA 22-0487

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 140

DUANE BENDER and REBECCA ESTATES, LLC

       Plaintiffs and Appellants,

   v.

STACEY ROSMAN AND JOHN DOES 1 to 10,

       Defendants and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 18-1433
Honorable Colette B. Davies, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Dennison A, Butler, Law Office of Dennison A. Butler, Red Lodge, Montana

      For Appellee:

      David F. Knobel, John M. Semmens, Crowley Fleck PLLP, Billings, Montana

                       Submitted on Briefs:  May 3, 2023

                              Decided:  July 18, 2023

Filed:

_____
               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellants Duane Bender and Rebecca Estates, LLC (collectively "Bender") appeal the order of the Thirteenth Judicial District Court, Yellowstone County, enforcing a settlement agreement between Bender and Appellee Stacey Rosman (Rosman), providing for Bender's purchase of a property owned by Rosman (the Property) near Shepherd, Montana. We consider the following issues:

> *I. Did the District Court err by concluding Rosman is entitled to specific performance of the settlement agreement?*

> *II. Did the District Court err in awarding Rosman attorney fees and prejudgment interest?*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 A dispute arose between Bender and Rosman regarding Rosman's use of a road crossing Bender's property, over which Rosman claimed an easement to access his residence. Bender filed suit against Rosman in September 2018 alleging trespass and tortious interference with contract, and seeking to quiet title. Pleading amendments, counterclaims, and crossclaims were filed. While this litigation was pending, Rosman was granted a temporary order of protection following alleged threatening and harassing behavior by Bender. Bender was also permanently enjoined from blocking Rosman's property access or materially altering the property at issue.[1]

---

[1] In July 2019, Bender's initial counsel moved to withdraw, citing Rule 1.16(b)(4), (6), of the Montana Rules of Professional Conduct. In pertinent part, Rule 1.16(b) of the Montana Rules of Professional Conduct states:

¶4     On December 5, 2019, prior to trial, the parties reached a settlement agreement through mediation (Settlement Agreement or Agreement).  The Settlement Agreement provided for purchase of Rosman's property by Bender, and stated:

> Bender hereby agrees to purchase Rosman's real property commonly known as [the Property] for a sum equal to the greater of the appraised value or $170,000.00.  The sale will be as-is.  Rosman makes no representations to Bender as to the condition of the property or any aspect of the property.  Bender will pay for an appraisal.  The closing shall be on or before April 1, 2020.  Rosman has the option to rent the premises for one month at $1,000 subsequent to closing.  Bender shall be able to inspect the property within seven days of December 5, 2019.  Bender shall not be obligated to purchase the property if it is not in substantially the same condition as of the date of said inspection on the date of closing, other than normal wear and tear.  If there is a dispute as to whether the property is in the same condition as of the inspection done within seven days of December 5, 2019 and the date of closing, the parties agree to binding arbitration by Russ Fagg.  The prevailing party in said arbitration shall be entitled to reasonable attorney's fees.
>
> The parties agree to specific enforcement of this agreement if it is breached by any party.  The prevailing party in any specific enforcement lawsuit shall be entitled to attorney's fees.

Following the parties' entry into the Settlement Agreement, Bender conducted a walkthrough of the Property and scheduled an "appraisal" for January 29, 2020.  However, Bender retained a real estate agent, capable of providing only a comparative market assessment, not an appraisal.  After Rosman noted this error, and emphasized the need for an appraiser, Bender retained an appraiser, John Brady, but cancelled the appraisal on the

. . . a lawyer may withdraw from representing a client if:

. . .

4. the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

. . .

6. the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client;

day it was scheduled to occur. Bender re-scheduled Brady to conduct the appraisal on February 27, 2020, telling Brady he would be sending his niece, Julie Bender, to attend the appraisal. Because of the history of acrimony, Rosman said he would not consent to Julie's presence during the appraisal, but that she could observe from the adjacent property. Brady was agreeable to this arrangement. However, on the day of the appraisal, Bender again cancelled Brady's appraisal. According to Brady's later testimony, Bender was so difficult that, following Bender's second last-minute cancellation, Brady threw Bender's file away. He further testified Bender had instructed him that the Property had "squatters," had previously been valued by a real estate agent at $145,000, and needed to be appraised at the value of $170,000—the lowest possible price under the Agreement.

¶5    After the second appraisal cancellation, Rosman hired Barrie Hogan to appraise the Property. Hogan's appraisal valued the Property at $202,000. On March 24, 2020, one week prior to the closing date, Bender contacted Kyle Williams about appraising the Property. Williams did not appraise the Property because insufficient time remained before the closing deadline to complete the appraisal. Consequently, in violation of his duty under the Settlement Agreement, Bender failed to arrange for the Property to be appraised prior to the closing deadline. Only Hogan's appraisal, commissioned by Rosman and appraising the Property at $202,000, was timely accomplished.

¶6    In accordance with the Agreement's April 1 closing deadline, Rosman and his family vacated the Property in preparation of delivering possession to Bender. However, Bender rejected Hogan's appraisal, insisting he would pay only $170,000 for the Property,

4

and failed to close by the deadline.[2] On April 13, 2020, Rosman filed an emergency motion asking the District Court to enforce the Settlement Agreement. Attempts to conduct a hearing were hampered by a series of delays that the District Court found were "solely attributable to Bender." The hearing initially set for May 20, 2020, was postponed when Bender was taken from the courthouse in an ambulance as proceedings were about to begin. A hearing scheduled a few days later was curtailed on account of Bender's continued hospital stay. Bender then submitted a doctor's letter stating he needed to avoid strenuous activity and recommending he be excused from court proceedings until mid-July. Although Bender found it objectionable, the District Court rescheduled the hearing for July 8, 2020. On July 7, Bender notified the District Court of a July 8, 2020, medical appointment, and requested another continuance. The District Court denied the request, noting the time of the medical appointment did not conflict with the hearing. That night, the residence on the Property burned, and was a complete loss. Amidst these delays, Bender's counsel withdrew from representation of Bender.[3] In light of these developments, the District Court granted another continuance, but awarded Rosman fees and costs to reimburse him for the expenses incurred as a result of Bender's delays.

¶7 When the hearing resumed on October 5, 2020, the District Court ordered, in light of the fire, additional briefing regarding the risk of loss borne by the parties. Following

---

[2] Ultimately, Bender did not object to Hogan's appraisal during the hearing to enforce the Agreement.

[3] Counsel also cited concerns under Rule 1.16(b)(4), (6) of the Montana Rules of Professional Conduct.

receipt of that briefing, and a hearing, the District Court issued its Order Enforcing Settlement Agreement, concluding that, under the Settlement Agreement, Bender was required to purchase the Property for the appraised price of $202,000. The District Court reasoned the condition precedent for execution of the contract was satisfied because "on the contractual closing deadline of April 1, 2020, the property was in substantially similar condition as it was at the time of contracting," and that Bender, not Rosman, had "precluded the closing of the property in a timely manner by April 1, 2020."[4] In the subsequent Findings of Fact and Conclusions of Law and Order Re: Attorneys' Fees and Costs (Fee Order), and the Judgment, both dated July 27, 2022, the District Court ordered Bender to pay Rosman $202,000 for the Property, $650 for the appraisal commissioned by Rosman, $34,028.28 in pre-judgment interest, $780.50 for costs and disbursements, and $43,767 in attorney fees.

¶8     Bender appeals.

## STANDARDS OF REVIEW

¶9     "[S]ettlement agreements are contracts, subject to the provisions of contract law." *Jarussi v. Farber*, 2019 MT 181, ¶ 15, 396 Mont. 488, 445 P.3d 1226. As such, the construction and interpretation of a settlement agreement is a question of law which we review for correctness. *In re Harms*, 2022 MT 41, ¶ 12, 408 Mont. 15, 504 P.3d 1108. Further, in equitable matters, "we will uphold a district court's findings of fact unless they

---

[4] The District Court did not, in reaching its decision, include any consideration of potential culpability for destruction of the residence by arson.

6

are clearly erroneous." *Lindemulder v. Lindemulder*, 2022 MT 119, ¶ 11, 409 Mont. 69, 512 P.3d 260.

¶10   We review a district court's grant or denial of attorney fees "for abuse of discretion unless a contract requires an award of fees, in which case a district court lacks discretion to deny the request." *Lewis & Clark Cnty. v. Wirth*, 2022 MT 105, ¶ 15, 409 Mont. 1, 510 P.3d 1206; *Harms*, ¶ 13.

## DISCUSSION

¶11   *I.   Did the District Court err by concluding Rosman is entitled to specific performance of the settlement agreement?*

¶12   As the District Court noted in its Enforcement Order, there is no dispute that a contract for sale of the Property was formed by the parties' Settlement Agreement.  Rather, the parties dispute the effect of the Agreement's terms.  Bender argues he is not obligated to purchase the Property because it burned down and was therefore not in "substantially the same condition" as when he inspected the Property.  Alternatively, Bender asserts this language functions as a "risk of loss provision" that assigned the risk of loss to Rosman as the seller.  In response, Rosman, argues the Property burned after the contractual closing deadline was missed due to Bender's breach, and therefore, the doctrine of equitable conversion dictates the risk of loss lay with Bender.

¶13   "If the terms of a contract are unambiguous, a court must apply the language of the contract as written." *Kalispell Aircraft Co., LLC v. Patterson*, 2019 MT 142, ¶ 17, 396 Mont. 182, 443 P.3d 1100 (quoting *Estate of Irvine v. Oaas*, 2013 MT 271, ¶ 22, 372 Mont. 49, 309 P.3d 986).  Ambiguity exists if language, when considering the entirety of the

7

contract, is "reasonably subject to two different interpretations." *Irvine*, ¶ 22. "The remedy of specific performance is allowed when (1) the act to be done is in the performance of an express trust; (2) the act to be done is such that pecuniary compensation for its nonperformance would not afford adequate relief; (3) it would be extremely difficult to ascertain the actual damages caused by nonperformance; or (4) specific performance was specifically agreed to in writing." *McDonald v. Cosman*, 2000 MT 126, ¶ 8, 299 Mont. 499, 6 P.3d 956; § 27-1-411, MCA. In the event of a breach, contracts for the sale of real property are specifically enforceable because pecuniary compensation is presumed inadequate. Section 27-1-419, MCA.

### A. Conditions Precedent

¶14     "A condition precedent is one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." Section 28-1-403, MCA; *Davidson v. Barstad*, 2019 MT 48, ¶ 20, 395 Mont. 1, 435 P.3d 640. "Before a party may require another party to perform under an obligation, the requesting party must fulfill all conditions precedent required of the requesting party." Section 28-1-406, MCA; *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 35, 306 Mont. 321, 34 P.3d 87. A condition precedent can apply to either the formation of a contract, which predicates the existence of the contract on satisfaction of the condition, or the performance of the contract obligation, which predicates the duty to perform on satisfaction of the condition. *See Thompson v. Lithia Chrysler Jeep Dodge of Great Falls*, 2008 MT 175, ¶ 22, 343 Mont. 392, 185 P.3d 332 ("In the law of contracts, conditions may relate to the existence of contracts or to the duty of immediate performance under them. Thus, there may be conditions to the

8

formation of a contract, or conditions to performance of a contract."); *Davidson*, ¶ 20 ("A condition precedent to contract formation is a specific condition, usually an extraneous event or circumstance or third-party act, the occurrence upon which the reciprocal promises constituting the contract consideration depend. In contrast, a condition precedent to a contract performance, duty, or right is a specific post-formation act or forbearance by a promisor, the occurrence upon which the reciprocal performance or forbearance of the other party depends." (Internal citations omitted)). Non-satisfaction of a condition precedent to contract formation "renders the contemplated contract non-existent," whereas non-satisfaction of a condition precedent to performance generally "constitutes a breach of an enforceable contract." *Davidson*, ¶ 21.

¶15 The Settlement Agreement includes two conditions precedent: 1) that "Bender will pay for an appraisal" of the Property for the purchase price to be set at "a sum equal to the greater of the appraised value or $170,000.00"; and 2) that the Property remain in "substantially the same condition . . . other than normal wear and tear" at closing. The language of the Settlement Agreement bound both parties: Rosman was bound to sell the Property for the purchase price determined upon appraisal, and Bender was bound to commission an appraisal and purchase the Property for the determined purchase price if the condition of the Property remained substantially the same. The only variables were the specific price and maintenance of the Property. Thus, the parties formed an agreement that included provisions which functioned as conditions precedent to *performance* of the Agreement. *Davidson*, ¶ 21.

9

¶16    Notably, the language setting the purchase price of "a sum equal to the greater of the appraised value or $170,000.00" upon completion of an appraisal to be commissioned by Bender did not allow the possibility of Bender not purchasing the Property, but rather left open only the specific amount.  In contrast, the language that "Bender shall not be obligated to purchase the property if it is not in substantially the same condition as of the date of said inspection on the date of closing, other than normal wear and tear" created a condition precedent to Bender's duty to purchase the Property.  If Rosman did not adequately maintain the Property to the agreed "date of closing," then the condition precedent would fail, and Bender would be excused from purchasing it.  Conversely, if Rosman adequately maintained the Property to the "date of closing," the condition precedent would be satisfied, and Bender would be obligated to purchase the Property.

¶17    The Settlement Agreement established the closing date as "on or before April 1, 2020."  The District Court found, and the record indicates that, aside from the installation of security cameras, the condition of the Property remained substantially the same up through the April 1, 2020, closing deadline, and this condition precedent was therefore satisfied.  Thus, no later than April 1, 2020, Bender was required to purchase the Property at the determined purchase price.  However, Bender repeatedly interfered with the process, failed to obtain an appraisal, rejected Hogan's appraisal, and refused to close—all in an apparent effort to force Rosman to sell the property for $170,000 in contravention to the Agreement's process for determination of the purchase price—and caused the closing deadline to lapse unfulfilled.

¶18     As for the condition precedent that Bender obtain an appraisal, "[a] condition may, of course, be waived by the party for whose benefit it is made." *Wendy's v. Larson*, 196 Mont. 525, 529, 640 P.2d 464, 466 (1982).  It may not be waived by the party it binds.  *See Smith v. Gunniss,* 115 Mont. 362, 379, 144 P.2d 186, 191 (1943) ("One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself of its non-performance.  In other words, he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself has occasioned.").  On this point, there is no merit to Bender's assertion his failure to pay for an appraisal prior to the closing date constitutes a failure of the condition precedent, thereby freeing him of the obligation to buy the Property.  Only Rosman could wield the non-satisfaction of Bender's duty to excuse himself from performance, and he did not, but rather vacated the property prior to the closing deadline to transfer its possession.  An appropriate remedy for Rosman's completion of the condition Bender failed to complete is, as the District Court concluded, requiring Bender to reimburse Rosman for the cost of Hogan's appraisal obtained to satisfy the contractual condition.

## B. Risk of Loss

¶19     We have adopted the doctrine of equitable conversion to adjudicate interests of parties contracting for the sale of real property.  *Sharbono v. Darden*, 220 Mont. 320, 324, 715 P.2d 433, 435 (1986).  Under the doctrine generally, when a contract for sale of real property is formed, the beneficial interest of the property vests with the vendee (buyer), while the vendor (seller) "retains legal title only as security for the purchase price."

11

*Sharbono*, 220 Mont. at 324, 715 P.2d at 435 (quoting *First State Bank v. United States*, 92 F.2d 132, 134 (9th Cir. 1937)). Accordingly, when a contract is silent regarding allocation of risk of loss, equitable conversion places upon the vendee the risk of loss during the course of the contract. *Sharbono*, 220 Mont. at 324, 715 P.2d at 435; *Musselman v. Mountain W. Farm Bureau Mut. Ins. Co.*, 251 Mont. 262, 266, 824 P.2d 271, 272 (1992).

¶20 Bender contends the language of the Settlement Agreement providing that "Bender shall not be obligated to purchase the property if it is not in substantially the same condition as of the date of said inspection on the date of closing, other than normal wear and tear," functioned to assign the risk of loss to Rosman. On this point, Bender is correct. Had the Property accidently burned down in March, this language would, as a condition precedent that was unsatisfied, excuse Bender from his contractual obligation to purchase the Property, and thus it placed the risk of loss on Rosman as the seller. However, here, the operable period of this provision was limited in duration, placing the risk of loss upon Rosman only through closing. The closing deadline was breached by Bender, the risk of loss thereafter shifted to Bender pursuant to equitable conversion, and the Property burned three months later.

¶21 The equity of this outcome is furthered by the tactics employed by Bender throughout the litigation and transactional process. Had Bender not repeatedly interfered with the appraisal process, or had accepted Hogan's appraisal when he failed to obtain one, the parties could have closed prior to the deadline. Then, Bender's actions delayed Rosman's attempt to obtain judicial resolution by way of his proceeding to enforce the

Settlement Agreement, thus extending the litigation beyond the house's loss by fire. Equity requires that Bender not be rewarded for his actions.[5]

¶22    Bender breached his vested performance obligation to purchase the Property for the determined purchase price by the closing deadline. *Davidson*, ¶ 21. Bender's breach triggered the Settlement Agreement's provision that "[t]he parties agree to specific enforcement of this agreement if it is breached by any party." As a contract for the sale of land, specific performance was an appropriate remedy. *See* §§ 27-1-411, -419, MCA.

¶23    *II. Did the District Court err in awarding Rosman attorney fees and prejudgment interest?*

¶24    Bender contends the District Court improperly awarded Rosman attorney's fees and prejudgment interest. The Settlement Agreement provides for attorney fees to the successful party in a specific enforcement action: "The prevailing party in any specific enforcement lawsuit shall be entitled to attorney's fees." As Rosman is the prevailing party herein, he was entitled to his attorney fees and costs, and the District Court was required to grant fees in accordance with the Settlement Agreement. *Kalispell Aircraft Co.*, ¶ 17.

¶25    Regarding prejudgment interest, Bender argues, invoking *Stafford v. Fockaert*, 2016 MT 28, 382 Mont. 178, 366 P.3d 673, that the final judgment amount was uncertain, and therefore, the District Court erred by awarding interest. However, as we explained in *Stafford*, a judgment sum is not uncertain simply because a party disputes it. *Stafford*, ¶ 26.

---

[5] Bender argues that because Rosman collected insurance proceeds on the loss of the house, equity should prevent Rosman from a double recovery. However, Rosman's decision to carry insurance on the property until it was sold is a contractual matter between Rosman and his insurance company.

Rather, because this action is for specific performance, the sum at issue is defined according to the Settlement Agreement:  the higher of the appraised value or $170,000.  In assessing the appropriate amount of interest, the District Court relied on § 25-9-205, MCA, which provides that interest shall be assessed at a rate of three percent higher that "the rate for bank prime loans published by the federal reserve system."  That is the rate the District Court properly employed.

¶26    Affirmed.

/S/ JIM RICE


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON